[No. 6,519.—In Bank.]

DAVID WEISENBERG ET AL. v. B. C. TRUMAN ET AL.

TRUST—DEDICATION TO PUBLIC USE—NOTICE OF UNRECORDED DEED—ACTION TO RECOVER REAL ESTATE.—The land was dedicated by the city of Los Angeles as a public cemetery, and conveyed to three trustees, but the deed was never recorded. Afterwards the cemetery was discontinued, and some of the bodies removed; but some still remained. Afterwards the City of Los Angeles, for a valuable consideration, made a quitclaim deed for the tract to one S. (referring to the premises as the ten-acre tract formerly dedicated for a public cemetery), and the Legislature, by the act of February 18th, 1872 (Stats. 1871–72, p. 93), legalized, ratified, and confirmed the said deed, and the ordinance under which it was made. In an action to recover the land by the grantees of S. against one of the trustees, and another holding under him, the Court found that the plaintiffs were purchasers under S. for valuable consideration, and at the time of purchasing and recording their deeds did not have actual notice of the trust deed, but did know that the premises had been dedicated and used as a cemetery, and had notice of facts sufficient to put them upon inquiry as to the true state of the title. *Held,* First—That the City of Los Angeles had power to make the deed to the Trustees. Second—That the deed itself imparted notice of the dedication of the land. And, third—That the deed passed the legal title to the trustees, and the trust was still in force; and that, therefore, the action could not be maintained.

APPEAL from a judgment for the defendants in the Seventeenth District Court, County of Los Angeles. FAWCETT, J.

*Glassell, Chapman & Smith,* for Appellant.

Leaving out of view the deed of 1857 to the trustees, which we will discuss hereafter, there can be no doubt of the plaintiffs' right to recover. A dedication to public use does not affect the title of the owner, or his right to convey the land or to use it in any way not incompatible with the public use, and the owner may still maintain ejectment against intruders. (Civ. Code, § 810; Wash. on Easements, 145, 155, 156; *Hunter* v. *Trustees, etc.,* 6 Hill, 412; *Carpenter* v. *O. & S. R. R. Co.,* 24 N. Y. 655; *Jackson* v. *Hathaway,* 15 Johns. 447; S. C., 8 Am. Dec. 263.)

As to the deed of 1857 to the trustees: 1. It is doubtful whether the city had a right to make it. (1 Perry on Trusts, § 287; *Hart* v. *Burnett,* 15 Cal. 530; *Redding* v. *White,* 27 id. 285; *Branham* v. *San Jose,* 24 id. 585; *City of Los Angeles* v. *Beaudry,* April T., 1879.) We do not of course deny the right of the city to make a dedication of the land for a graveyard, but simply that it had any right to convey the title to trustees. 2. The conveyance to the trustees was not recorded, and the plaintiffs being purchasers in good faith and without notice, and their deeds having been recorded, they are not affected by it. The Court expressly finds that "the plaintiffs were purchasers under Sanchez for a valuable consideration by them paid, and at the time of purchasing and recording their deeds did not have actual notice of the trust deed."

The finding that the plaintiffs "had notice of facts sufficient to put them upon inquiry as to the true state of the title," is not a finding of notice, "but only of evidence tending to prove notice." (*Pico* v. *Gallardo,* 52 Cal. 206; *Fair* v. *Steveno,* 29 Id. 486.)

Whether the deed to the trustees was originally valid, and whether the plaintiffs had notice of it or not, are, however, immaterial questions. No beneficial interest was conveyed to the trustees. A special trust was declared in their favor, and all the beneficial interest undisposed of resulted to the city. (Civ. Code, § 866; 1 Cruise's Dig. 362 (395); 2 Wash. on R. P., 439 (172); Wash. on Eas. 155, 145-6, 154; *Hunter* v. *Trustees, etc.,* 6 Hill, 412.) The effect

of the deed, therefore, was to leave the equitable fee in the city, subject to the public use, and the management of the trustees until the discontinuance of the cemetery, and, after that, absolute.

The deed of the city and the confirmatory act of the Legislature not only conveyed the equitable title, but also vested the legal title in the grantee. (*Easterbrooks* v. *Tillinghast*, 5 Gray, 17; 1 Cruise's Dig. 362, § 57; 2 Wash. on R. P. 440 173.) We are to be governed, not by the words of the act, but by its manifest intent; and that this was to vest the title in Sanchez can not be doubted. (*Wilkinson* v. *Leland*, 2 Peters, 661–2.)

But if this was not the case, it is, at all events, clear that upon the enactment of the Codes the legal title was transferred to the grantee of the city. (Civ. Code, §§ 848, 871, 865, 866, 2279.) The manifest intent of these sections was to convert all equitable estates (with certain specified exceptions), into legal estates. Section 848 has been repealed, but it operated on its enactment. The language of these sections, as well as their intent, apply to all existing trusts, whether created before the Codes were enacted or not; and if construed otherwise, they would effect only part of their manifest purpose. This was the effect of the English Statute of Uses (1 Cruise's Dig. 301, § 3), and the Code must be so construed. (Civ. Code, § 5.)

*Brunson & Wells*, for Respondent.

Plaintiffs having alleged but seisin in fee of the premises, they can not recover except on showing a strict legal title, and they can not avail themselves of any equities, trusts, or other rights outside of cold legal title. (*Lawrence* v. *Webster*, 44 Cal. 388; *Sweeney* v. *Reilley*, 42 id. 402.) An outstanding title in a third party will defeat plaintiffs' recovery under this complaint. (*Cranmer* v. *Porter*, 41 Cal. 462; *Moore* v. *Tice*, 22 id. 513; *Simson* v. *Eckstein*, id. 580; *Welch* v. *Sullivan*, 8 id. 165.) In 1857, the authorities of Los Angeles City conveyed the lands described in the complaint by a good and sufficient deed to three trustees, one of whom was defendant Mallard, for cemetery purposes. By this finding of fact it

appears that the legal title vested in the three parties named, in 1857.

Counsel for appellants refer us to § 871 of the Civil Code, upon Uses and Trusts: "When the purpose for which the trust was created ceases, the estate of the trustee also ceases." But in the case at bar the purpose has not ceased, and the Court below expressly so finds. "A trust can not be revoked by the trustor after its acceptance, actual or presumed, by the trustee and beneficiaries, except by the consent of all the beneficiaries, unless the declaration of trust reserves a power of revocation to the trustor, and in that case the power must be strictly pursued." (Civ. Code, § 2280.) The public who have buried their dead there are consequently the beneficiaries. Those whose dead still remain must all consent, before the trust can be revoked by the trustor. Those who have removed their dead have by this act consented; the others have not, and as to them the trust still exists, and the legal title still remains unchanged, still vested in the trustees, and therefore the quitclaim deed of the city in 1870 conveyed no title.

Appellants complain that they had no notice of our deed because it was not recorded. The deed from the city to Sanchez under which they claim, and which they attempted to cure by legislation, describes the land as "the ten-acre tract of land formerly dedicated by the City of Los Angeles for a public cemetery." They therefore knew that it had been dedicated for a public cemetery. This directed their attention to the land itself, and when they viewed the premises they found graves and buried dead there. This gave them notice of the acceptance of the trust and the actual appropriation of the land for the uses to which it had been dedicated. The dead bodies were there when they took their deed, and they are there still, and consequently they had notice of the continued existence of the trust, and that it had not been "extinguished by the entire fulfillment of its object."

MORRISON, C. J.:

Plaintiffs brought this action of ejectment in the District Court of Los Angeles County, for the recovery of a certain tract of land situate in the City of Los Angeles. The action was tried by the Court, findings were filed by the Judge, and

upon such findings judgment was entered in favor of the defendants. The appeal is on the judgment roll, consisting of the complaint, answer, findings, and judgment. The following are the findings in the case:

"This cause was duly tried and submitted to the Court on the 6th day of June, 1878, a jury trial having been regularly waived, and all parties being present by counsel, and the evidence and pleadings and argument having been duly heard and considered, the Court now makes the following findings of fact, viz.:

"1. The lands described in the complaint are a part of the pueblo lands of the City of Los Angeles, and have been duly patented by the United States Government to the authorities of said city.

"2. In the year 1857 the authorities of said city set apart the lands described in the complaint as a public cemetery, and in pursuance of said action caused the same to be conveyed by a good and sufficient deed to three trustees, namely, N. A. Potter, J. S. Mallard (a defendant), and Ralph W. Emerson, in trust for the public use and for the purposes of a cemetery, which deed has never been recorded.

"3. Thereafter said tract was used for cemetery purposes, and bodies were interred there until the year 1861, when the City Council resolved to discontinue said cemetery and to remove the bodies already interred there to another place; since which time no further interments have taken place in said grounds. A number of the bodies were removed, and some still remain there interred.

"4. On the 14th of November, 1870, the City of Los Angeles, for a valuable consideration, made a deed of quitclaim to said tract to one T. A. Sanchez, describing the premises in said deed as the 'ten-acre tract of land formerly dedicated by the City of Los Angeles for a public cemetery, bounded by the homestead tract of J. S. Mallard and wife, and situated between Pico and Sixth streets; the same being the premises particularly described in the complaint as amended.' That this is the deed that was mentioned in and confirmed by the Act of February 13, 1872 (Laws of 1871–72, p. 93), and that plaintiffs have duly succeeded to the title of said Sanchez, through mesne conveyances before

the commencement of this suit; that Isaac Slessinger, now deceased, was, under said Sanchez title, a tenant in common with plaintiffs (except Cohn) and that plaintiff, B. Cohn, is his duly appointed, qualified, and acting administrator.

"5. That defendants were, at the commencement of this action, and are now, in possession of the premises in controversy, except the defendant Nichols, who is not, and has not been in possession of any part thereof; that defendant Truman holds under defendant Mallard, who conveyed a portion of the premises to the former in the year 1876.

"6. That neither of said defendants have held adverse possession of said premises for more than five years at any time before the commencement of this action.

"7 That plaintiffs were purchasers under Sanchez for a valuable consideration by them paid; and at the time of purchasing and recording their deeds did not have actual notice of the deed formerly made by the City of Los Angeles to the trustees, Potter, Mallard, and Emerson; but did know that the premises had been dedicated and used as a cemetery; and they had notice of facts sufficient to put them upon inquiry as to the true state of the title.

" From these findings the conclusion of the Court is, that the legal title to the premises in controversy is vested in Potter, Mallard, and Emerson, and not in the plaintiffs.

" That the effect of the act of February 13th, 1872 (see finding 4), was merely to confirm to Sanchez such title as the city had to convey at the time the deed was made to him; that the city had at the time no title, and therefore conveyed none.    And it results that judgment should be entered in favor of defendants, dismissing the action and for costs ; and it is so ordered."

It is contended, on behalf of the appellants, that the deed of trust from the City of Los Angeles to Mallard and his associates was *ultra vires*, and therefore void.

By the act to incorporate the city of Los Angeles, passed April 4, 1850, it is provided that " The corporation created by this act shall succeed to all the rights, claims, and powers of the Pueblo de Los Angeles, in regard to property, and shall be subject to all the liabilities incurred, and obligations created by the ayuntamiento of said pueblo."

That such a conveyance by the pueblo would have been good, we have no doubt. (*Hart* v. *Burnett*, 15 Cal. 542; *Payne and Dewey* v. *Treadwell*, 16 id. 221; *Scott* v. *Dyer et al.*, 54 id. 430.)   And the City of Los Angeles, by virtue of the authority conferred upon it by its charter, possessed the same power over its lands that appertained to it as a pueblo under the Mexican law.

Indeed it was eminently fit and proper, that a cemetery should be established by the city for the interment of its dead, and that such cemetery should be placed in the possession and under the control of suitable trustees, who were willing to devote the time and trouble necessary to its proper management.   We can see no objection to the deed of trust mentioned in the second finding of the Court, and it vested the legal title to the land in the trustees for the purposes of the trust.

It is claimed, however, that the purposes of the trust have been fully accomplished, and that the public use for which the dedication was made and accepted has long since ceased. But the findings do not sustain this conclusion.   It is true that the cemetery is no longer used for the interment of the dead, but the findings show, that some of the bodies still remain interred therein.

It is the right and duty of the trustees to protect those bodies from unlawful desecration, and it is their right to hold the property in order that that duty may be properly performed.

The next point made is, that plaintiffs had no notice of the dedication.   But it is perfectly apparent that the deed from the city, under which plaintiffs claim title, gave them sufficient legal notice of that fact.

Finding 4 is: That "on the 14th day of November, 1870, the city of Los Angeles, for a valuable consideration, made a deed of quitclaim to said tract to one T. A. Sanchez, describing the premises in said deed as the 'ten-acre tract of land *formerly dedicated by the city of Los Angeles for a public cemetery*, bounded,'" etc.   This deed imparted notice of the fact that a dedication of the land had been made by the city, for a specific purpose, and the property had been used for that purpose, as was apparent from the fact that there were graves

there at the time Sanchez took his deed. If, therefore, the deed from the city to Mallard, and others, had been recorded, the notice of the dedication would not have been more complete. We are of the opinion that the deed from the city of Los Angeles to Mallard and his associates passed the legal title, and that the trust thereby created is still in force, or was at the time this suit was tried.

It will be time enough for the city, or its subsequent grantees, to assert title to the premises, after the bodies now lying in the cemetery have been decorously removed to another resting-place, and the purposes of the trust have fully terminated.

Judgment affirmed.

ROSS, J., and MYRICK, J., concurred.

McKINSTRY, J., concurring: I concur in the judgment.

SHARPSTEIN, J., dissenting:

I dissent. It is not claimed on behalf of respondents that the sale and conveyance by the City of Los Angeles to the appellants would not have been valid if the premises had not been previously conveyed to the respondents. The deed under which they claim, according to the findings of the Court, had not been recorded, and the appellants had not actual notice of its existence at the time of their purchase; but they knew that the premises ·had been dedicated as a cemetery, which is not material, unless the mere fact of such dedication rendered a subsequent conveyance by the city void, which is not claimed.

The subsequent finding, that the appellants "had notice of facts sufficient to put them upon inquiry as to the true state of the title," is neither a finding of the ultimate fact of notice, or of facts from which that fact is legally inferable. It is not found that the appellants, having notice of facts sufficient to put them upon inquiry, did not make and prosecute that inquiry with reasonable diligence and unavailingly. In the absence of such a finding, the finding that they had notice of facts sufficient to put them upon inquiry is not the equivalent of a finding that they had actual notice of the prior conveyance.

If the plaintiffs had notice sufficient to put them upon inquiry as to the existence of the unrecorded deed, and neglected to make any inquiry, or to prosecute it with reasonable diligence, the Court should have found that they had actual notice. Instead of which it found that they did not have actual notice, which is a direct finding in their favor upon that issue. If the Court likewise found that they did have actual notice, or found facts from which it is necessarily inferable that they did, then the findings upon that question are contradictory, and the judgment should be reversed on that ground.

It is unnecessary to inquire whether the evidence would have justified a finding that the plaintiffs had actual notice of the unrecorded deed. It is not the province of this Court to supply findings of fact. If the findings do not support the judgment, it must be reversed without reference to the evidence. The jurisdiction to find a fact from the evidence has not been conferred upon this Court.

But if the finding as to notice was sufficient, would it necessarily affect the plaintiffs' title? The Court found that in the year 1857 the city conveyed the premises to three trustees, one of whom is a defendant herein, "in trust for the public use and for the purpose of a cemetery." And further found, that in 1861—twenty years ago—" the City Council resolved to discontinue said cemetery and to remove the bodies already buried there to another place; since which time no further interments have taken place in said grounds. A number of bodies were removed, and some still remain there interred."

It may be safely assumed, upon abundant authority, that the city of Los Angeles, with the sanction of the Legislature, could legally discontinue the use of said premises for burial purposes. (*Windt* v. *The G. R. Church*, 4 Sandf. Ch. 471; *Brooklyn P. C.* v. *Armstrong*, 3 Lansing, 429; *Kincaid's Appeal*, 66 Pa. 411; *Mayor of N. Y.* v. *Slack*, 3 Wheeler's Cr. Cases, 237.) The city did discontinue the use of said premises for such purposes, and sold the land to the plaintiffs' grantor, and the Legislature confirmed said sale. (Laws of 1871–2, p. 93.) Thereupon the title held by the trustees for a public use reverted to the city. When the public use for which the

trust was created ceased, the trust terminated and the title reverted to the trustor.

It is not now necessary to consider how this might affect those who have friends or relations buried there. They are not before us. But their rights, whatever they may be, can not be affected by the mere conveyance of the land to the plaintiffs. The rights of survivors are not changed by the mere transfer of title. "The payment of fees and charges to the corporation or its officers, upon interments, gives no title to the land occupied by the body interred. It confers the privilege of sepulture for such body, in the mode used and permitted by the corporation; and the right to have the same remain undisturbed, so long as the cemetery shall continue to be used as such, and so long also, if its use continue, as such remains shall require for entire decomposition; and also the right, in case the cemetery shall be sold for secular purposes, to have such remains removed and properly deposited in a new place of sepulture." (*Windt* v. *G. R. Church,* 4 Sandf. Ch. 474.) This is quoted and approved by Sharswood, J., in *Kincaid's Appeal,* 66 Pa. 411. If the views above expressed upon either point be correct it follows that the judgment should be reversed.

THORNTON, J., concurred in the foregoing opinion of Mr. Justice SHARPSTEIN.

McKEE, J., dissenting:

When the estate of a *cestui que trust* has passed to a trustee subject to the trust, the former becomes seised of his first estate upon satisfaction of the trust, and having the right of entry therein, he is entitled to maintain ejectment against the trustee.

The purpose for which the trust was created being satisfied, the trust no longer exists; the trust estate has ended (§ 871, Civ. Code), and the functions of the trustee have ceased, and although the legal title may remain in him, it is but a barren title, unaccompanied with the right of possession against the person entitled to the estate. He can not avail himself of it to maintain or defend an action of ejectment between the *cestui que trust* and himself; he holds

the title simply for the purpose of reconveying it to the person entitled to the estate. The law makes it his duty to reconvey. (§ 1109, Civ. Code.) A Court of equity, if called upon, will compel him to reconvey, and a Court of law, in an action of ejectment between him and his *cestui que trust,* or the person entitled to the estate, will presume that he has reconveyed.

In *Lade* v. *Holford,* 2 Amb. 479, Lord Mansfield said that when trustees ought to convey to the beneficial owner, he would leave it to the jury to presume where such presumption might reasonably be made, that they had conveyed accordingly, in order to prevent a just title from being defeated by a matter of form. In *Hopkins* v. *Ward,* 6 Munf. 38, it was held that a *cestui que trust,* after the purposes of a deed had been satisfied, may maintain ejectment upon a demise in his own name, although the legal estate is still in the trustee; and in *French* v. *Edwards,* 21 Wall. 147, it was held that ejectment would lie to recover the possession of land, where it was held after the use had been determined.

As the trustees were entitled to the possession of the land only for the purposes of the trust, that right ended when the trust ended by the discontinuance of the cemetery. Thereafter their possession could only be continued for their own private purposes, and as those were not founded upon any right or estate paramount to that of their *cestui que trust,* the Court below should have adjudged the plaintiff entitled to the possession, and rendered judgment accordingly. I, therefore, think the judgment of the Court below should be reversed.