[No. 11172.   In Bank. — July 30, 1886.]

L. SCHLESSINGER ET AL., APPELLANTS, *v.* J. S. MALLARD ET AL., RESPONDENTS.

EXPRESS TRUST — TERMINATION OF — CONVEYANCE BY TRUSTOR — ESTATE OF GRANTEE. — The author of an express trust which does not provide to whom the trust property shall belong upon a failure or termination thereof may convey the property subject to the trust; and the grantee will acquire all the rights in and to the property that the trustor had.

ID. — TRUST FOR CEMETERY PURPOSES — LOS ANGELES — QUITCLAIM DEED — CONFIRMATION BY LEGISLATURE. — The land in question was originally part of the pueblo lands of the city of Los Angeles. In 1857, the city set it apart as a public cemetery, and conveyed it to the defendant and two others, since dead, in trust for the uses and purposes of a cemetery. A small portion of the land was used for such purposes until 1861, when the city resolved, by ordinance, to discontinue the use and to remove the bodies there buried. This was done, except that a few bodies buried in one corner were not removed. In 1870, the city, by a quitclaim deed, conveyed the land to the grantor of the plaintiffs, which conveyance was subsequently confirmed by an act of the legislature. *Held,* that the deed, in connection with the act of confirmation, transferred all the interest of the city in the land.

ID. — RESULTING TRUST. — *Held further,* that as to the portion of the land not used for the purposes of a cemetery, and as to which such use was discontinued, a trust resulted by operation of law in favor of the city and its grantees.

ID. — RIGHT OF TRUSTOR TO RECONVEYANCE. — The abolition of the cemetery by the city terminated the trust relation, and thereupon it became the duty of the trustees to reconvey the trust property.

ID. — TRUSTEE CANNOT HOLD ADVERSELY — STATUTE OF LIMITATIONS. — A trustee cannot be permitted to retain possession as such after repudiating the trust and claiming adversely.

ID. — SUBSTITUTION OF TRUSTEES — EQUITY. — A court of equity will substitute new trustees to manage the trust property when its safety or proper administration so requires, but will not do so if no good result is to be accomplished thereby.

ID. — GRANTEE OF TRUSTOR — CONVEYANCE TO BY TRUSTEE — DECREE. — The complaint, after setting up the trust and all the facts connected with it, alleged that the defendant had violated and repudiated it, had used the trust property for his own benefit, and that he was an unfit person to be trustee. The court found these allegations to be true, but instead of substituting a new trustee, it decreed that the defendant should convey the land to the plaintiffs, and provided that they should hold the lot in which the bodies were buried, subject to the public easement as a place of burial until the bodies were removed by proper authority. *Held,* that the decree was proper.

Appeal from an order of the Superior Court of Los Angeles County granting a new trial.

The facts are stated in the opinion.

*Glassell, Smith & Patton,* for Appellants.

The effect of the trust deed was to leave the equitable fee in the city, subject to the public use and management of the trustees, until the discontinuance of the cemetery, and after that absolute. The deed to the plaintiff's grantor, though in form quitclaim, conveyed to him the beneficial title to the property. (Perry on Trusts, secs. 386 et seq.; *Easterbrook* v. *Tillinghast,* 5 Gray, 17; *Wilkinson* v. *Leland,* 2 Pet. 661; *Weissenberg* v. *Truman,* 58 Cal. 63; *Carpentier* v. *Williamson,* 25 Cal. 154; *Crane* v. *Salmon,* 41 Cal. 63; *Stanway* v. *Rubio,* 51 Cal. 41.) The object of the trust being accomplished, the plaintiffs are entitled to a conveyance from the trustee. (2 Perry on Trusts, sec. 920; Civ. Code, secs. 871, 1109; 2 Pomeroy's Eq. Jur., sec. 1043; 2 Spence's Eq. Jur. 47; *Goodson* v. *Ellison,* 3 Russ. 583.)

*Wells, Van Dyke & Lee,* and *Brunson & Wells,* for Respondents.

The quitclaim deed did not convey the title of the city. (*San Francisco* v. *Lawton,* 18 Cal. 465; *Morrison* v. *Wilson,* 30 Cal. 344; *Cadiz* v. *Majors,* 33 Cal. 288; *Gee* v. *Moore,* 14 Cal. 472.)

Searls, C.—This is an action to compel the defendants, as trustees, to convey to the plaintiffs certain premises situate in the city of Los Angeles, and for an accounting for the rents and profits thereof.

Plaintiffs had judgment; defendant J. S. Mallard moved for a new trial, which was granted, and this appeal is taken from the order granting such new trial.

It appears from the record that the lands in question are part of the pueblo lands of the city of Los Angeles,

and have been duly patented by the government of the United States to the authorities of said city.

In 1857, the city of Los Angeles, by its proper officers, set apart the land in question as a public cemetery, and caused the same to be conveyed to defendant J. S. Mallard and two others (now dead) in trust for the uses and purposes of a cemetery.

The property was used for cemetery purposes, and bodies were interred therein, until 1861, when the city resolved by ordinance to discontinue its use as a cemetery, and to remove the bodies buried therein to another place, which was done, except that from two to five bodies were not removed; since that date it has not been used as a place of sepulture.

On the fourteenth day of November, 1870, the city of Los Angeles, for a valuable consideration, conveyed the property by quitclaim deed to one T. A. Sanchez.

The conveyance to Sanchez was confirmed by act of legislature of the state of California (Stats. 1871–72, p. 93), and the plaintiffs herein have succeeded to the title of Sanchez.

Defendant J. S. Mallard is in possession under the deed of trust, and the other defendant holds a portion of the land under him.

In 1876 plaintiffs brought an action of ejectment against the defendant Mallard and the others to recover the property. Defendants had judgment, which on appeal was affirmed by this court (58 Cal. 63) in an opinion in which the following language was used: "We are of the opinion that the deed from the city of Los Angeles to Mallard and his associates passed the legal title, and that the trust thereby created is still in force, or was at the time this suit was tried.

"It will be time enough for the city or its subsequent grantees to assert title to the premises after the bodies now lying in the cemetery have been decorously removed to another resting-place, and the purposes of the trust have fully terminated."

This action was then brought, and after a trial, all the allegations of the complaint were found true, except as to the facts established in the former case, which are set out in full, and as to the value of the rents, issues, and profits, and judgment was rendered in favor of plaintiffs, requiring the defendants to convey the property to said plaintiffs, and decreeing that a small rectangular tract eighty by thirty feet in the southeast corner be held by the plaintiffs subject to a public easement as a place of burial of the bodies therein interred until the same shall be removed by public authority or by the friends of the deceased parties, and providing that the graves should not be disturbed, etc.

The new trial was granted by the successor of the learned judge by whom the cause was tried, and seems to be based upon the following propositions:—

1. The bodies have not been removed from the cemetery, and the legal title is yet in the defendants.

2. That the fact that defendants claim title as trustees, and then deny the title and claim adversely, cannot affect this action.

3. Plaintiffs cannot recover the legal title from defendants unless the latter hold it, and if they hold it as *trustees*, it cannot be recovered so long as the trust remains incompleted.

4. Whether defendants have abused the trust or not is of no importance in this action, as it is not brought to remove the trustees and appoint others in their place to carry out the trust, but is brought to recover the legal title from the defendants, which cannot be done at present.

These views at first glance seem formidable, if not conclusive.

If the conclusions are erroneous, it must be not from any fault in the deductions, but from assuming as premises facts not warranted by the record.

All of the allegations of the complaint are found to be true, except those hereinbefore noted.

Turning, then, to the complaint, we find that among other things it is averred:—

1. That no portion of the land was ever used as a cemetery, except a rectangular piece eighty feet by thirty in the southeast corner.

2. There now remains buried on said tract about two bodies, the graves of whom are in the rectangular piece of land aforesaid.

3. Defendant Mallard has planted the greater portion of the remainder of the land to vines and fruit-trees, and since 1870 he and those under him have used the land for agricultural and other private purposes.

4. That prior to the commencement of this action, defendants repudiated the trust created by the deed of 1857.

5. The objects of the trust have been fulfilled.

All of the foregoing allegations are sustained by the testimony of defendant Mallard, except it may be the fifth, and as he states that after he went on there the graveyard was abandoned and he did not know where it was, it is not singular that the court should have found the allegation supported by the proofs.

The complaint further avers that Mallard and his grantees have violated the conditions of said trust; that said Mallard has never performed his duties as such trustee, but has used his powers and the trust property for his own private use and advantage, and that he is an unfit person to be a trustee.

Plaintiffs further offer to have the portion occupied by the graves of deceased persons conveyed to trustees, or to submit to such terms and conditions in relation thereto as to the court may seem proper.

Our code has included within its provisions many of the rules previously established by courts of equity, and in most instances has not departed from the doctrine previously upheld.

The following extracts have a bearing on the present case:—

"1. Except as hereinafter otherwise provided, every express trust in real property,. valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust.  The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust."   (Civ. Code, sec. 863.)

"2. Notwithstanding anything contained in the last section, the author of a trust may in its creation prescribe to whom the real property to which the trust relates shall belong in the event of the failure or termination of the trust, and may transfer or devise such property, subject to the execution of the trust."   (Civ. Code, sec. 864.)

"3. Where an express trust is created in relation to real property, every estate not embraced in the trust, and not otherwise disposed of, is left in the author of the trust or his successors."   (Civ. Code, sec. 866.)

"4. Where a trust in relation to real property is expressed in the instrument creating the estate, every transfer or other act of the trustees in contravention of the trust is absolutely void."   (Civ. Code, sec. 870.)

"5. When the purpose for which an express trust was created ceases, the estate of the trustee also ceases."   (Civ. Code, sec. 871.)

"6. A trust is extinguished by the entire fulfillment of its object, or by such object becoming impossible or unlawful."   (Civ. Code, sec. 2279.)

In the present case, the city of Los Angeles was the author of the trust, and not having provided in the creation of such trust to whom the property should belong upon a failure or termination thereof had a right to transfer the property, and the purchaser took subject to the trust.   The plaintiffs, having purchased, stand in the position which their grantor would have occupied but for the conveyance.

The fact that the deed from the city of Los Angeles to Sanchez was in form a *quitclaim* does not alter the

position of plaintiffs; taken together with the act of the legislature, it constituted him an assignee of all the interest of the city. As provided by section 864 of the Civil Code, the city might "transfer or devise such property, subject to the execution of the trust."

The reversion, if such it may be termed, of the property upon the execution of the trust was in no sense the acquisition of another title.

The defendant went into possession as the trustee of an express trust.

For a series of years he has devoted nearly all of the land deeded to him for cemetery purposes to agricultural and horticultural purposes, has sold a portion of it, and now deliberately urges as reasons why he should not be required to convey:—

1. That a small portion of the land is still devoted to cemetery purposes, and therefore the objects of the trust are not consummated; and

2. That he holds the land adversely to all the world, the plaintiffs included, except the portion sold and the parcel occupied by the graves, as to which parcels he disclaims all title.

The answer to these propositions is:—

1. It appears that, except as to the small subdivision in the southeast corner, the land was never devoted to the purposes of a cemetery, and there was as to the portions not used, when it was established that it could not be used for such purpose, a resulting trust created by operation of law in favor of the city of Los Angeles and its assigns. This principle of equity is recognized by the Civil Code, quoted *supra*.

2. The city of Los Angeles terminated the trust relation by abolishing the cemetery in 1861, as it had a right to do, and thereupon it became and was the duty of the trustees to reconvey the property.

The duty of the city to the friends and relatives of deceased persons buried in the cemetery became a ques-

tion as between the city and its grantees and such friends and relatives of the deceased so interred, and after its abandonment as a cemetery such duty did not concern the trustees.

3. The defendant cannot be permitted to retain possession as a trustee after repudiating his trust and claiming adversely. To permit such a course would be inequitable and an encouragement to fraud.

By such a rule, the trustee could remain in possession by virtue of his office, and at the same time claim adversely until his claim ripened into a title under the statute of limitations.

The court below had full jurisdiction to do what was essential to be done in the premises, and by its judgment, it seems to us, did do what was proper.

There was no necessity for the appointment of other trustees, as suggested in the complaint. The action of the court in requiring the plaintiffs to take the plat containing the bodies of deceased persons, subject to the easement or right of sepulture, until such bodies were lawfully removed, was all that was required.

A court of equity will at all times see to it that trustees are appointed to manage trust property when required for its safety or proper administration, but it will not do so when no good result is to be accomplished thereby. If, however, it shall at any time become necessary or proper to appoint trustees, the Superior Court has ample authority to do so. (Civ. Code, secs. 2287–2289.)

The contention of the defendants that no proper case is made for the removal of the defendants cannot be sustained.

The allegations of the complaint charge a state of facts sufficient to warrant their removal,—nay, more: to make it the duty of the court to remove them.

They answered to the complaint, and under section 580 of the Code of Civil Procedure, the court was authorized to grant any relief consistent with the case

made by the complaint and embraced within the issue.

The complaint set up the trust and all the facts connected with it, and alleges that the trustee has violated his trust, has repudiated such trust, that he has used the trust property for his own benefit, and that he is an unfit person to be trustee, etc.

These things being true, the court had a right to remove the trustee, and if necessary, to appoint another in his place. The court did this in effect by requiring the trustee to convey the property to the plaintiffs, and providing that the plaintiffs should hold the lot in which the bodies are.buried, upon the conditions and subject to the servitude imposed by the decree.

We see nothing in the action of the court below inconsistent with the case of *Weisenberg* v. *Truman*, 58 Cal. 63. *That* was an action of ejectment, and the court held that the legal title being in the defendants, plaintiffs could not recover. *This* is an action in equity against the trustee, charging both a breach and a completion of the trust, and seeking for either or both of such causes to compel him to convey the title, for the want of which it was held the plaintiffs could not recover in the action of ejectment.

The error, if any, in refusing the motion for nonsuit was cured by the testimony subsequently introduced by defendant. (*Ringgold* v. *Haven*, 1 Cal. 108; *Smith* v. *Compton*, 6 Cal. 24; *Perkins* v. *Thornburg*, 10 Cal. 189; *Winans* v. *Hardenbergh*, 8 Cal. 291.)

We are of opinion the judgment of the court below was correct, and that the order granting a new trial should be reversed.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the order is reversed.

THORNTON, J., and McKEE, J., concurred in the judgment.