[S. F. No. 6176.   In Bank.—February 24, 1915.]

VICTORIA HOSPITAL ASSOCIATION (a Corporation), Respondent, v. ALL PERSONS, etc., Defendants; G. A. WRIGHT, Appellant.

ESTATES OF DECEASED PERSONS—DECREE OF DISTRIBUTION—EFFECT OF OMNIBUS CLAUSE.—A provision in a decree distributing the estate of a deceased person, to the effect that any other property not now known or discovered, which may belong to said estate, or in which the estate may have an interest, is distributed to a specified person, is sufficient to pass whatever interest the deceased had at the time of his death in property not specifically mentioned in the decree.

DEEDS — CONDITIONS SUBSEQUENT — CONSTRUCTION.—Conditions subsequent in deeds are not favored in law because they tend to destroy estates, and no provision in a deed relied on to create a condition subsequent will be so interpreted if the language of the provision will bear any other reasonable construction.

ID.—CREATION OF CONDITIONS SUBSEQUENT—FORFEITURE CLAUSE.—It is not essential to the creation of a condition subsequent that a forfeiture clause should be inserted, such as that a failure to comply with the condition will render the conveyance null and void, and the premises shall revert to the grantor, though some such clause would appear to be extremely desirable and in some cases absolutely necessary for the purpose of showing clearly and unmistakably the intent of the grantor.

ID.—USE OF WORDS "ON CONDITION"—INTENT OF PARTIES.—While no precise form of words is necessary to create a condition subsequent still it must be created by express terms or by clear implication.   The words "on condition that," are apt and appropriate words, both in

their technical and popular sense, to create the condition, and such words *ex proprio vigore* import such condition, in the ab--nce of other language inconsistent therewith. The mere use of such words, however, will not necessarily import such condition, when the intent of the parties, as gathered from an examination of the whole instrument, is otherwise.

ID.—DEED TO CHARITABLE CORPORATION—CONDITION SUBSEQUENT NOT CREATED.—The deed in question was made to a corporation, named the Victoria Hospital Association, formed solely for the charitable purposes, as stated in its articles of incorporation, "to provide medical attendance and medicines, and hospital accommodations, for the sick; to establish and conduct an hospital to be known as the Victoria Hospital; to acquire, buy, sell or encumber real estate or other property in connection with the objects of the association; to take charge of the property thereof; and generally to do and perform, in accordance with the law and the by-laws thereof, all and every act and thing requisite or desirable to carry out the objects of the association." The deed recited that "for the consideration hereinafter stated," the grantor gave to the grantee, "its successors and assigns forever," a lot of land in the city and county of San Francisco, one hundred feet square, "to have and to hold the said premises unto said party of the second part, its successors and assigns forever." Following the *habendum* and *tenendum* clause was this provision. "This deed is made upon the express condition and for the consideration that the said real property hereby conveyed and the income therefrom, shall be used by the said party of the second part for benevolent purposes and in all respects in compliance with the objects for which said party of the second part is formed, pursuant to its articles of incorporation. . . . It is hereby provided that the hospital to be erected on the land be named the Victoria Memorial Hospital." *Held,* that the deed did not manifest an intent on the part of the grantor to express a condition affecting the title to the land, and that, notwithstanding the use of the words "upon the express condition," the whole instrument fairly expresses the intention on the part of the grantor to convey the property absolutely to the grantee in consideration of its mere promise to use the same for the purposes specified, being all the purposes for which the grantee was organized and exists, and that the provision was nothing more than a covenant on the part of the grantee to the effect that the property will be so used.

ID.—DEED DOES NOT CREATE TRUST IN LAND.—Such conveyance, being in substance an absolute grant to the corporation for all its corporate purposes, the residuary devisee of the grantor did not acquire any contingent reversionary interest in the land, based upon the theory that a trust was created thereby.

ID.—DISSOLUTION OF CHARITABLE CORPORATION—REVERSION OF LAND TO DONOR—DONOR RETAINS MERE POSSIBILITY NOT COUPLED WITH INTEREST.—Assuming the existence in this state of the rule that the real

estate of a charitable corporation reverts or escheats to the donor upon its dissolution, the donor, during the existence of the corporation and while it owns the land, is without any legal interest therein. He has at most only a mere possibility, not coupled with an interest. Whatever legal interest in the property he may ever have, on this account, will be *created* only by the dissolution of the corporation at a time when it still owns the land.

Id.—McEnerney Act—Decree Need not Determine Possibility of Donor.—In a proceeding by such corporation, under the so-called McEnerney Act, to establish its title to the land so conveyed, it is necessary to ascertain and determine only existing interests, and a decree establishing its title will not bar the assertion of the interest subsequently acquired by a reverter upon the dissolution of the corporation at a time when it still owns the land.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Olney, Pringle & Mannon, and J. R. Pringle, for Appellant.

F. D. Brandon, and John L. McNab, for Respondent.

ANGELLOTTI, C. J.—This is an action under the McEnerney Act, so called, to establish plaintiff's title to a lot of land, one hundred by one hundred feet, at the corner of Nineteenth and Valencia streets in the city and county of San Francisco.   By the judgment it was decreed that plaintiff is "the sole owner and seized in fee simple absolute" of said property, that its title thereto "is good and valid," that the same "is hereby established and quieted as against all the world" except as to a certain deed of trust to secure a loan, "and that no other person has, holds or is entitled to any mortgage, or other lien, estate, right, title, interest or claim" in and to said property or any part thereof.   We have here an appeal upon the judgment-roll from said judgment by one G. A. Wright, the only person contesting the claim of plaintiff in the court below.

The findings show the facts relied upon by appellant for a reversal or modification of the judgment.

Plaintiff has only such interest in the property as it obtained by virtue of a deed executed and delivered to it by

Mary A. Lapidge, a widow, on February 24, 1908, she being then the owner thereof. By this instrument, "for the consideration hereinafter stated," she gave, granted, aliened and confirmed to plaintiff, "its successors and assigns forever," the said property, "to have and to hold . . . the said premises . . ., unto said party of the second part, its successors and assigns forever." The *habendum* and *tenendum* clause was followed by this provision, viz.:

"This deed is made upon the express condition and for the consideration that the said real property hereby conveyed and the income therefrom, shall be used by the said party of the second part for benevolent purposes and in all respects in compliance with the objects for which said party of the second part is formed, pursuant to its articles of incorporation, a copy of which was filed in the office of the secretary of state of the state of California, on the 28th day of November, 1888.

"It is hereby provided that the hospital to be erected on this land be named the Victoria Memorial Hospital."

The objects for which plaintiff corporation was formed, as set forth in its articles of incorporation, were as follows, viz.:

"Second: That the purposes for which it is formed are, to provide medical attendance and medicines, and hospital accommodations, for the sick; to establish and conduct an hospital to be known as the 'Victoria Hospital'; to acquire, buy, sell or encumber real estate or other property in connection with the objects of the association; to take charge of the property thereof; and generally to do and perform, in accordance with the law and the by-laws thereof, all and every act and thing requisite or desirable to carry out the objects of the association."

Plaintiff entered into possession of the property, under said deed, and has ever since been in such possession. It is not claimed that plaintiff has ever used or threatened to use said property for any purpose other than the purposes stated in the deed.

Mrs. Lapidge died testate in the year 1909. No mention was made in her will of this property. Appellant was named therein as sole and residuary devisee and legatee. In due course, all the property of her estate was distributed to appellant, this property not being specifically referred to in the decree. The decree, however, contained a provision to the effect that any other property not now known or discovered,

which may belong to said estate, or in which the estate may have an interest, is distributed to appellant. This, according to the decisions, was sufficient to pass title to whatever interest deceased had at the time of her death in this property. (See *Humphrey* v. *Protestant Episcopal Church,* 154 Cal. 170, [97 Pac. 187].)

The act under which this proceeding was brought provides that the judgment "shall ascertain and determine all estates, rights, titles, interests and claims in and to said property and every part thereof, whether the same be legal or equitable, present or future, vested or contingent, . . . and shall be binding and conclusive upon every person who at the time of the commencement of the action, had or claimed any estate, right, title, or interest in or to said property, or any part thereof." It is not disputed that the effect of the decree appealed from is to conclusively establish the fact to be that plaintiff is the sole owner, in fee simple absolute, of all the property, and that neither appellant nor any one else has any interest whatever, "legal or equitable, present or future, vested or contingent," therein.

1. It is claimed that the language of the deed creates a condition subsequent, upon the failure to perform which appellant, as successor of Mrs. Lapidge, will become entitled to re-enter and become the absolute owner of the property. It is urged that for this reason the judgment appealed from is erroneous, in that it neither so limits the interest of plaintiff, nor saves the right of appellant.

We are of the opinion that the deed should not be so construed.

It is, of course, a familiar principle that such conditions are not favored in law because they tend to destroy estates, and that no provision in a deed relied on to create a condition subsequent will be so interpreted if the language of the provision will bear any other reasonable construction. As said in *Hawley* v. *Kafitz,* 148 Cal. 395, [113 Am. St. Rep. 282, 3 L. R. A. (N. S.) 741, 83 Pac. 249] : "There must be language used which is so clear as to leave no doubt that the grantor intended that an estate upon condition subsequent should be created—language which *ex proprio vigore* imports such condition." It has, however, many times been held that it is not essential to the creation of a condition subsequent that a forfeiture clause should be inserted, such as that a failure to

comply with said condition will render this conveyance null and void, and said premises shall revert to said first party (see *Papst* v. *Hamilton*, 133 Cal. 631, [66 Pac. 10], approved in *Fitzgerald* v. *County of Modoc*, 164 Cal. 493, [44 L. R. A. (N. S.) 1229, 129 Pac. 794]; *Quatman* v. *McCray*, 128 Cal. 285, [60 Pac. 855]), though some such clause would appear to be extremely desirable and in some cases absolutely necessary for the purpose of showing clearly and unmistakably the intent of the grantor. As said in *City of Portland* v. *Terwilliger*, 16 Or. 465, [19 Pac. 90], such provisions "sometimes become very important in construing the language of the conveyance when its meaning would otherwise be left in doubt." As said in *Hawley* v. *Kafitz*, 148 Cal. 395, [113 Am. St. Rep. 282, 3 L. R. A. (N. S.) 741, 83 Pac. 249], "while no precise form of words is necessary to create a condition subsequent, still it must be created by express terms or by clear implication." It is true that the words "on condition that" are apt and appropriate words, both in their technical and popular sense, to create a condition, and it appears to be the generally accepted doctrine that, as the words "on condition" are the precise and technical terms by which an estate or condition is created, such a phrase is sufficient to create a conditional estate, unless there is something else in the deed indicating the contrary. As said in *Guild* v. *Richards*, 16 Gray (Mass.), 309, "in such cases, to use the quaint language of the books, 'without any more saying, the feoffee hath an estate upon condition.'" (See, also, *Clapp* v. *Wilder*, 176 Mass. 332, [50 L. R. A. 120, 57 N. E. 692].) This is the accepted doctrine in this court (see *Papst* v. *Hamilton*, 133 Cal. 631, [66 Pac. 10]; *Hawley* v. *Kafitz*, 148 Cal. 395, [113 Am. St. Rep. 282, 3 L. R. A. (N. S.) 741, 83 Pac. 249]; *Fitzgerald* v. *County of Modoc*, 164 Cal. 493, [44 L. R. A. (N. S.) 1229, 129 Pac. 794]), and such words *ex proprio vigore* import such condition, in the absence of other language inconsistent therewith. But it has never been held here, and we do not understand it to be the rule elsewhere, that simply because these words are used, we necessarily have an estate on condition. It may freely be conceded that with such words we have such an estate unless upon consideration of the whole deed a different intent is indicated. As was said in *Episcopal City Mission* v. *Appleton*, 117 Mass, 326, "although the words 'upon condition' in a conveyance of real estate are apt words to create a

condition, any breach of which will forfeit the estate, yet they are not to be allowed that effect when the intention of the grantor, as manifested by the whole deed, is otherwise," or when "the intent of the parties as gathered from an examination of the whole instrument" is otherwise. (*Stanley* v. *Colt,* 5 Wall. (U. S.) 119, [18 L. Ed. 502].) They must be given that effect "in the absence of anything appearing in the deed to the contrary." (See *Clapp* v. *Wilder,* 176 Mass. 332, [50 L. R. A. 120, 57 N. E. 692].)

Coming to a consideration of the deed here involved: We have as the grantee a corporation, the expressed objects of which, according to its articles of incorporation, are "to provide medical attendance and medicines, and hospital accommodations, for the sick" and "to establish and conduct an hospital to be known as the 'Victoria Hospital.'" The grantor purports "for the consideration hereinafter stated" to give and grant to this corporation, "its successors and assigns forever," a lot of land 100 by 100 feet. She declares that said corporation, "its successors and assigns" are to have and hold the same forever. Then follows the declaration that the deed "is made upon the express condition and for the consideration," etc. Said "condition" and "consideration" are "that the said real property . . . and the income therefrom shall be used by the said party of the second part for benevolent purposes and in all respects in compliance with the objects for which said party of the second part is formed," according to its articles of incorporation on file, in other words, to assist in providing medical attendance, etc., for the sick, and to assist in establishing and conducting a hospital to be known as the Victoria Hospital. The statement "It is hereby provided that the hospital to be erected on this land be named the Victoria Memorial Hospital" clearly constitutes no part of the expressed "condition" and "consideration," and indicates nothing more than that it was then contemplated that a hospital would be erected on this property. The "condition" or "consideration" was that the real property and the income thereof were to be used for benevolent purposes, in compliance with the objects for which the corporation was organized.

It is to be observed that there is nothing herein limiting the use to be made by the corporation of this property, so long as such use is for one or more of the objects for which the corporation was formed. There is nothing that can be con-

strued as requiring the property to be used as a site for a hospital. "The said real property," and "the income therefrom" are to be "used" by the grantee for the same purposes, i. e.: for any of the benevolent purposes for which the corporation was formed and exists. It could not be held, for instance, that there would be any forbidden diversion of any of the property, *corpus* or income, if all of the same were devoted by the corporation to the payment of charges incurred by it for medical attendance and medicines and hospital accommodations for the sick, although no hospital was ever established or conducted by it. Such a use would be strictly in accord with the language of the alleged condition or consideration, being one "for benevolent purposes," in all respects in compliance with the objects for which the corporation was formed. The same would be true of an absolute sale of the property with the *bona fide* intent to devote the proceeds to the objects of the corporation, or of continuing to hold the property as income producing property, using the income for such objects. It is to be noted that the deed grants the property to the party of the second part and "its successors *and assigns*" forever, thus implying to some extent at least the right on the part of the corporation to dispose of the property, free of restriction or limitation in so far as the grantee is concerned. The considerations we have referred to materially differentiate the case at bar from those wherein the language was such as to require the property itself to be retained and used for a prescribed purpose, or to require improvements of a certain character to be constructed thereon, etc. The use here prescribed is one that does not necessarily have to do with the land itself at all, being entirely consistent with an absolute disposition thereof free of all claims in the hands of the grantee of the corporation. It is further to be noted that the grant is made "for the *consideration* hereinafter stated," and that the "consideration" thus referred to is the matter relied upon as expressing a condition. The words "upon the express condition" are followed by the words "and for the consideration that the said real property . . . shall be used," etc., indicating that the words "condition" and "consideration" were used as expressing the same idea. If the words "upon the express condition" be here given the technical effect claimed for them by appellant, they are inconsistent with the words "for the consideration" which simply imply a

promise or covenant on the part of the grantee to use the property in the way prescribed, rather than a mere condition having no promissory force.   We are utterly unable to read this deed as manifesting an intent on the part of the grantor to express a condition affecting the title to this land, and are of the opinion that notwithstanding the use of the words "upon the express condition," an examination of the whole instrument fairly indicates the intent on the part of the grantor to convey the property absolutely to the corporation in consideration of its mere  promise to use the same for the purposes specified, being all  the purposes for which the corporation was organized and exists, with the result that we have nothing more than a covenant on the part of the grantee to the effect that the property will be so used.    (See *Fitzgerald* v. *County of Modoc,* 164 Cal. 493, [44 L. R. A. (N. S.) 1229, 129 Pac. 794].)   In *Papst* v. *Hamilton,* 133 Cal. 631, [66 Pac. 10], specially relied upon by appellant, the conveyance to certain persons as "joint tenants, with right of survivorship as such," was "upon the conditions, however, that the premises shall be used solely for the purpose of erecting, furnishing, keeping and maintaining thereon an academic or collegiate school" for certain purposes, "and for a residence or residences thereon for the professors," etc., "and for no other purpose whatever," and there was nothing in the deed to indicate any other intent than  that manifested by these words.   As said in *Fitzgerald* v. *County of Modoc,* in regard to this, "it was clear that the estate was upon condition."

2. The claim that appellant has some contingent reversionary interest in this land, based upon the theory that even if it be held that the conveyance was not upon condition, nevertheless a trust was created thereby, cannot, in our opinion, be sustained.   Much of what we have already said as to our construction of the instrument is in point here.   It appears to be conceded on both sides that the corporation was, as is indicated by the record, one organized and existing purely for certain charitable purposes.   The conveyance, as we read it, was an absolute one of *all* of the interest of the grantor in the land to the corporation, for any and all of said purposes, with the result that the corporation can lawfully use the property in any manner it sees fit for any of the purposes for which it may lawfully use any property owned by it.   The conveyance was, in substance, an absolute grant to the corporation

for all the purposes of the corporation, in consideration of the implied undertaking on the part of the corporation that it would use the property for such purposes. The use to be made of the property was not so limited by the grantor as to indicate an intent to impose a trust on this land. As is said by counsel for plaintiff: "The only trust, if it can be so denominated, is one imposed upon the conscience of the grantee and its directors, viz.: that the property shall be used for some of the benevolent purposes contemplated by the articles of incorporation. Those articles contemplated sale, encumbrance, and every other beneficial use to which the property or its proceeds might be put." We think that the cases relied upon by learned counsel for appellant in this regard are all distinguishable from this upon the facts. In our own *Schlessinger* v. *Mallard*, 70 Cal. 326, [11 Pac. 728], relied on by appellant, the conveyance appears to have been specifically made "in trust for the uses and purposes of a cemetery." The cases cited by appellant in this connection involve conveyances dedicating the land itself to some particular use, for which it is to be kept intact and retained, and express prohibitions as to sale, mortgage, etc., were contained in some of such conveyances.

3. It is said that the old common-law rule, to the effect that when a corporation is dissolved such *real estate* as it then has "reverts or escheats" to the grantor or donor, is in force in this state in so far as charitable corporations are concerned. It is consequently urged that appellant, as the successor of Mrs. Lapidge, has some sort of contingent interest in this property which should be protected by the decree, so that in the event that plaintiff corporation is dissolved at some future time, and at the time of such dissolution it still owns this property, he may receive the same. We do not deem it necessary to determine whether the doctrine that the real estate owned by such a corporation reverts or escheats to the donor upon its dissolution exists in this state, though it has been stated in one of our decisions that it does. (See *People etc.* v. *President and Trustees of College of California,* 38 Cal. 174.) We are satisfied that, assuming for all the purposes of this decision the rule here to be in all respects as claimed by appellant, nevertheless he now has at most, so far as any of this property is concerned, only a mere possibility, not coupled with an interest. Whatever legal interest in the property he

may ever have, on this account, will be *created* only by the dissolution of the corporation at a time when it still owns this real property.   The rule is practically a rule of succession. It is the dissolution of the corporation with the real property still belonging to it that creates the right, and until that event happens, the donor is as much without any legal interest in the land as any stranger.   (See generally *Nicoll* v. *New York & Erie R. R. Co.,* 12 N. Y. 121.)   Obviously the decree here will not bar the assertion by appellant of any such right or interest if he subsequently acquires it.   It is necessary to ascertain and determine in such a proceeding as this only existing interests.   "A mere possibility, such as the expectancy of an heir apparent, is not to be deemed an interest of any kind."   (Civ. Code, sec. 700.)   We cannot see that appellant at best has anything more than such "a mere possibility."   It is very clearly and definitely held in one of the cases cited by appellant (*Trustees* v. *Venable,* 159 Ill. 215, [42 N. E. 836]), that such a naked possibility of a reverter is not assignable and will not pass to a devisee.   It is there said: "He (the grantor) had no future estate in the land, but only what is called a naked possibility of reverter, which is incapable of alienation or devise."   Our own Civil Code provides that "a mere possibility, not coupled with an interest, cannot be transferred."   (Sec. 1045.)   So it is very much to be doubted whether appellant, simply as the residuary devisee and legatee under Mrs. Lapidge's will ever could have any interest under the rule referred to.   But as to this it is, of course, not necessary to decide here.

No other matter suggested by the briefs appears to merit discussion.

The judgment appealed from is affirmed.

Sloss, J., Melvin, J., Lorigan, J., Shaw, J., and Henshaw, J., concurred.