CHARLOTTE LILLEY & others *vs.* FIFTY ASSOCIATES.

Commutation of rent payable in iron is not to be presumed from the payment and receipt as rent of a sum of money equivalent to the value of the iron, though such payment has been uniform and has continued for more than twenty years.

A lease for a thousand years made in 1817 reserved a yearly rent, payable in quarterly instalments, of ten tons of Russia Old Sables iron, and gave a right to the lessor to enter on failure to pay the rent fifteen days after demand. At the time of making the lease the parties agreed in writing that until 1840 a certain amount of gold bullion should be received in lieu of the iron as rent. On every quarter day from 1840 to the end of 1862, $212.50 were paid, and described in the receipts as rent due according to the conditions of the lease, but during this period the value of Russia Old Sables iron did not vary greatly from $85.00 a ton. Said iron has not been imported into this country for many years. On December 12, 1862, the lessor notified the lessee that the rent due on March 1, 1863, must be paid in iron. On a bill in equity by the lessee to enjoin the forfeiture of the lease for failure to pay the rent in iron, *Held*, that the lessor had still the right to demand iron for rent, but that the lessee had the right to a longer notice of his intention to do so.

GRAY, J. On the 8th of September 1817 David Sears made a lease to Uriah Cotting of a lot of land on Market Street (now

Cornhill) in Boston for the term of one thousand years, yielding and paying "the yearly rent of ten tons of the first quality of Russia Old Sables iron, to be delivered on the premises," in four equal quarterly payments on the first days of March, June, September and December during the term; with a right on the part of the lessor, his heirs and assigns, upon any failure to pay rent for thirty days after it should become due, or fifteen days after demand thereof, to enter for breach of the condition and become repossessed of the land; and a liability of the lessee, his representatives and assigns, after and not before such entry, to pay the rent and five pounds of iron additional for every day until payment. The defendants soon afterwards became the owners of the lessor's interest; and the lessee's interest was assigned in 1823 to John Lilley, who erected valuable buildings upon the land and continued to hold the same until his death in 1864. When the quarter's rent fell due in March 1863, Lilley tendered to the defendants in payment thereof the sum of two hundred and twelve dollars and fifty cents in treasury notes of the United States, which they refused to receive, not upon the ground that these were not a legal tender generally, but because they demanded the delivery of two and a half tons of Russia Old Sables iron as such rent, and they threatened to enter for breach of condition of the lease in not delivering such iron. Lilley thereupon, on the 23d of March 1863, filed a bill, praying for relief in equity, and especially for an injunction against taking possession on account of the nondelivery of such iron during the pendency of the suit or at any time hereafter, or until he might have an opportunity of sending for such iron, if the court should think him under obligation so to do. Lilley's widow and children, one of whom is also administrator of his estate, have since his death been made parties to the suit by bill of revivor.

The plaintiffs seek to maintain this bill upon two grounds; first, that the rent in iron originally stipulated for was permanently commuted by agreement in 1840 into a money rent of eight hundred and fifty dollars a year; and second, that the lessors gave no reasonable previous notice to the lessee of their wish that the rent should be actually paid in iron in March 1863

1. The facts bearing upon the question of commutation, as appearing from the evidence taken in the cause, are as follows : On the day of the date of the lease, the lessor and lessee agreed in writing that until 1840, in lieu of the iron, certain amounts of gold bullion might be paid and received, " in the manner, and at the several times, and under like forfeiture, as stipulated for the payment and delivery of the said iron in said lease." The evidence on which the plaintiffs rely to prove a commutation of rents since the expiration of that agreement only shows that on every quarter day from 1840 to 1862 inclusive the sum of two hundred and twelve dollars and fifty cents in money was paid by the lessee and received by the defendants, and was described in the receipts given by the defendants' agent, and during part of the time in bills made out and presented by him, as " the quarter's rent due this day according to the conditions of the lease," or in words equivalent; and that no demand of payment in iron was ever made until December 1862. But as it is proved that during this period the value of Russia Old Sables iron did not greatly vary from eighty-five dollars a ton, the acceptance of rent in money at the rate of eight hundred and fifty dollars a year, instead of insisting on receiving ten tons of iron specifically, is at least as consistent with the theory that each quarter's rent was paid and received in money for mutual convenience merely, and without any intention to prevent the parties or either of them from insisting in the future on the payment of rent according to the terms of the lease, in case it should suit the interest or the caprice of either to do so. An agreement for the commutation of rent, payable in specific articles, is not to be presumed from a course of dealing which is quite as consistent with a substantial and satisfactory performance of the original contract by paying, from time to time, the equivalent in money of the articles stipulated to be delivered. The case is wholly different from those in which an extinguishment or release of rent has been presumed from an omission to demand any rent whatever for more than twenty years. *Master of St. Cross* v. *Howard de Walden,* 6 T. R. 338. *Livingston* v. *Livingston,* 4 Johns. Ch. 294.

**2.** But it appears by the testimony of merchants of long experience in the Russia trade that Old Sables iron, though still manufactured in Russia, has not been imported into this country since 1856. Such being the case, the defendants having omitted for more than forty years ever to demand specific payment of the rent in such iron, and having thereby justified the lessee in supposing that they would not again require it, and in taking no steps to procure the iron, it was manifestly unjust and inequitable in the defendants to insist on receiving iron in payment of the rent for any quarter, without giving the lessee ample time and opportunity to import it; and we are all of opinion that, under the circumstances, less than three months' notice was unreasonable, and insufficient to justify the defendants in insisting upon a forfeiture of a leasehold estate of great value and extraordinary duration; and that the attempt to enforce the forfeiture was such an exercise of strict legal right as a court of equity, upon familiar principles, should restrain and relieve against. *Biddulph* v. *St. John*, 2 Sch. & Lef. 534. *Atkins* v. *Chilson*, 11 Met. 117. The plaintiffs are therefore entitled to an *Injunction and costs.*

*S. E. Sewall*, for the plaintiffs.
*C. A. Welch*, for the defendants.