JOHN G. AVERY, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

Plaintiff was lessee of certain premises, upon which was a hotel, formerly separated from defendant's premises by a strip of land thirty feet wide. This strip, in the deed under which defendant claimed, which was from W., the then owner of the whole property, was described as thereby dedicated for the purposes of a public street; the dedication was never accepted by the public. The deed from W. stated that the conveyance was for the purpose of a railroad depot only,

and the grantee erected a depot upon the premises.  W., devised the remaining property, one-fourth to each of four devisees.  On partition of the hotel property, not including the strip of thirty feet, two of the devisees became the owners.  They subsequently quit-claimed to defendant's predecessor an undivided one-half of that portion of the strip in question, twenty feet wide, adjoining the land so conveyed by W.  The deeds contained a provision to the effect that the conveyance was made on the express condition that the grantee. its successors or assigns should at all times maintain an opening into the premises conveyed, opposite to the hotel, for the convenient access of passengers and baggage to and from the premises conveyed, which opening should at no time be closed.  The hotel was accessible from the depot across said strip, and depended largely for its patronage upon the passengers arriving at and departing from the depot.  Defendant, on succeeding to the title of W.'s grantee, built a high and substantial fence the whole length of the strip, on the line between the twenty feet so conveyed and the remaining ten feet, with no opening therein, thus cutting off all passage between the hotel and depot.  In an action, among other things, to restrain the continuance of the fence, *held*, that by the failure to accept the dedication, the thirty feet strip remained the property of W , and descended to his devisees at his death; that plaintiff, as lessee of the grantors, could not question the validity of the quit-ciaim deeds which must be regarded as conveying all the interest of the grantors in the twenty feet, and they thereby abandoned all claim to the same as a public highway; but that the provision in the deeds as to an opening was a covenant running with the land conveyed; that such covenant made the right of passage across the twenty feet a right or easement appurtenant to the hotel property, and so it was enforceable by plaintiff as lessee of such property; and that, therefore, the action was maintainable.

Plaintiff's complaint simply alleged that he was in possession of the hotel property.  On trial defendant moved for a dismissal of the complaint on the ground that it did not show plaintiff to be a party or privy to any covenant in the deeds.  The court, on motion of plaintiff, permitted an amendment of the complaint setting up the lease to plaintiff. *Held*, no error.

The complaint alleged the strip of land in question to be a public highway and the fence for that reason a nuisance.  There were, however, averments to the effect that there existed an easement appurtenant to the hotel property, consisting of a right of way across some portion of the strip for passengers and their baggage, and that defendant in erecting the fence had left no opening, as of right it should have done. *Held*, that while the omission to state in the complaint that the easement claimed was reserved by the deeds might have been ground for a motion to make the complaint more definite, it did not defeat plaintiff's

right to any relief by virtue of the reservation which he could not obtain on any other ground.

The judgment below directed the removal of the whole fence. *Held*, error; that plaintiff was simply entitled to an opening opposite to the hotel of sufficient size to permit the convenient passage of, and at no time to be closed against, passengers and their baggage.

Argued May 10, 1887; decided June 7, 1887.)

APPEAL from judgment of the General Term of the Superior Court of Buffalo, entered upon an order made May 9, 1885, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated ·in the opinion.

*George C. Greene* for appellant. To prove a highway by dedication, three facts must be shown : First, the intention to dedicate; second, an act of dedication; third, the acceptance by the public. (*State* v. *Greene*, 41 Ia. 693 ; *Buchanan* v. *Curtis*, 25 Wis. 99 ; *Maudersched* v. *Dubuque*, 29 Ia. 73 ; *Cook* v. *Harris*, 61 N. Y. 454.) Without acceptance and ratification by the city of Buffalo, there was no dedication, and the public acquired no rights under the deed ; and until acceptance, the offer to dedicate could be withdrawn, or the dedication be revoked. (40 N. Y. 442–450; 19 Johns. 136 ; 16 Barb. 251 ; 2 Abb. [N. C.] 386, 395, 397 ; 14 Barb. 328 ; 61 N. Y. 454· 66 id. 261–269; 94 id. 16 ; *Jackson* v. *Stevens*, 10 Johns. 110–114.) The clause in the deeds of 1857 as to maintaining an opening, is clearly and strictly a condition subsequent. (1 Hilliard on Real Prop. 381, § 26 ; id. 382, § 27 ; 2 Abb. [N. C.] 56 ; *Woodworth* v. *Payne*, 74 N. Y. 196 ; 62 id. 592.) Right of re-entry for breach of condition subsequent does not pass by a conveyance of land, and until there is a re-entry by the grantor or his heirs, for the breach, the estate is not forfeited, but remains unimpaired in the grantee, and a mere stranger cannot take advantage of it. (*Towle* v. *Remsen*, 70 N. Y. 303, 312 ; *Nicoll* v. *N. Y. C. & E. R. Co.* 131, 12 id. 134, 135 ; 22 Wend.

201; 8 Am. and Eng. R. R. Cases, 734; 63 Mo. 68; 46 Barb. 109; 134 Mass. 82, 85; 70 N. Y. 303, 312.) The plaintiff does not occupy such a relation to the grantor as to enable him to enforce it or maintain an action for the breach. (*Huttemier* v. *Albro*, 2 Bosw. 546, 556.) If one conveys land in fee simple, and neither excepts any part nor reserves anything to himself out of it, but restricts the grantee to a particular use of the land, this restriction is void, as repugnant to proprietary rights of an owner in fee. (*Craik* v. *Wells*, 11 N. Y. 315, 322.) An exception or reservation to a third person not a party to the deed is void. (*Craik* v. *Wells*, 11 N. Y. 323; *Stevens* v. *Adams*, 1 Sup. Ct. R. [T. & C.] 537, 539; 34 Barb. 566; 24 Hun, 430.)

*John Frankenheimer* for respondent. Occupancy by the plaintiff, and his use of the premises as a hotel for many years, gave him a cause of action against the defendant for the erection and maintenance of the nuisance. (*Brown* v. *Brown*, 30 N. Y. 519.) The amendment of the complaint allowed did not introduce a new cause of action, but it tended to justice. (*Fogg* v. *Edwards*, 20 Hun, 90.) Evidence of the difference in the receipts of the hotel and restaurant in corresponding months, with or without the nuisance there, may not have been admissible definitely to fix the damage, yet it was admissible as one of the means by which the court might arrive at the proper measure of compensation. (*Albert* v. *Bleecker St. R. R. Co.*, 2 Daly, 389; Wood on Nuisance, § 876; *St. John* v. *Mayor, etc.*, 13 How. 527.) The court properly held the measure of damages to be the difference in the rental value. (*Weil* v. *Stewart*, 19 Hun, 272; *Francis* v. *Schoellkopf*, 53 N. Y. 152; *Jutto* v. *Hughes*, 67 id. 267.) The facts established beyond question the existence of a right of way over the alley as an easement or appurtenant annexed to the fee of the hotel premises. (*In re Eleventh Ave.*, 81 N. Y. 436; *Child* v. *Chappell*, 9 id. 246; *Kings Co. F. Ins. Co.* v. *Stevens*, 87 id. 287; *White's B'k of Buffalo* v. *Nichols* 64 id. 65; *Wiggins* v. *McCrary*, 49 id. 346; *Cox* v. *James*,

45 id. 557.) Although the lease to the plaintiff is of "the building known as the Continental Hotel," still it carried with it the right to use the alley in the same way that it had always been used, as an appurtenant to the hotel premises. (*Doyle* v. *Lord*, 64 N. Y. 432; *People* v. *Gedney*, 10 Hun, 151; *Newcome* v. *Coulson*, 21 Moak's Eng. R. 851.) The plaintiff being in possession of the right of way as appurtenant to his hotel, it was an unlawful act for the defendant to interrupt his enjoyment of it. (3 Blacks. Com. 241; McAdam Landl. and Ten. § 61.) It is evident from the deeds of 1857 that what the parties contemplated was the erection of a depot by the defendant on the strip of twenty feet, and an opening into it for the convenience and benefit of the hotel, which should never be closed against passengers and their baggage. (*Nichols* v. *Wentworth*, 2 East. R. 910; *Coleman* v. *Beach*, 97 N. Y. 545.) The language of the deeds of 1857 does not constitute a condition subsequent, but does constitute a covenant. (2 Washb. on R. P. [4th ed.], 2, 6, 7.) Conditions are not favored, and must be clearly expressed. (*Craig* v. *Wells*, 11 N. Y. 315; *Bridger* v. *Pierson*, 45 id. 601; *Countryman* v. *Deck*, 13 Abb. [N. C.], 110. The damages awarded by the court were upon the basis of a diminution of the rental value of the premises by reason of the nuisance, and were proper. (*Francis* v. *Schoellkopf*, 53 N. Y. 152; *Jutto* v. *Hughes*, 67 id. 267.)

PECKHAM, J. The plaintiff is lessee of certain premises in Buffalo, which were originally divided from premises of defendant's by a strip of land thirty feet wide and running from east to west 240 feet, and thence north about 100 feet. All of the property once belonged to one James Wadsworth, who, in 1844, granted and conveyed a portion of it to defendant's predecessor for the purpose of a passenger and freight depot, and for no other purpose, and described this above mentioned strip of land thirty feet wide as thereby dedicated for the purpose of a public street.

Some question was made upon the trial as to the right of

defendant to use, for the purpose of a railroad restaurant, any portion of the property thus conveyed; but the court held, under the other facts in the case, that defendant's right to so use it could not now be successfully questioned, and there has been no appeal from such decision and so the question may be dismissed from our consideration.

In 1850, James Wadsworth died leaving a will by which he devised to his children the land not theretofore conveyed to defendant's predecessor, being one-quarter to each of his two sons, and one-quarter to his executors, in trust for his daughter Elizabeth Wadsworth, and one-quarter to his executors in trust for his grandson Martin Brimmer, Jr.

So far as the evidence in the case shows this left the title, not only to the premises leased by the plaintiff, but also to the thirty feet strip of land already mentioned, in the devisees under the will of James Wadsworth, because of the lack of any acceptance of the dedication on the part of the public authorities, which will be again referred to. In 1853 partition of the lands now leased by plaintiff (which lands excluded the thirty feet strip) was made, by which one-half of such premises was conveyed to the trustees of Martin Brimmer, Jr., and one-half to Charles James Murray, who was then an infant. Both conveyances bounded the premises by the line of this thirty feet strip, called therein an " alley." In 1857 the trustees of Brimmer and the general guardian of Murray conveyed by quit-claim deeds to defendant's predecessor an undivided one-half part of that portion of the strip in question, being twenty feet wide and adjoining the lands of the said predecessor theretofore conveyed to it by James Wadsworth in his life-time. This left the title to the remaining ten feet of such strip unaffected, while an undivided half of the interest in the twenty feet just mentioned remained in the other devisees under the will of Wadsworth, assuming that Brimmer's and Murray's trustees and guardian held title to one-quarter each and that it was conveyed to the defendant's predecessor by the deeds above mentioned.

These deeds of the twenty feet contained a provision per-

mitting. the construction of a building thereon at the discretion of the railroad company by a wall along the line bounding on the remaining ten feet, and with roof projecting over such ten feet strip a reasonable width for eaves-trough and water conductor, such projection to be on sufferance of the grantors provided they should want at any time to build on the land.

Both these deeds also contained the following language : "This conveyance is upon the express condition that the said railroad company, their successors or assigns, shall at all times maintain an opening into the premises hereby conveyed opposite to the Exchange Hotel, so called" (the premises now leased by plaintiff), "adjacent to the premises hereby conveyed, for the convenient access of passengers and their baggage to and from said premises hereby conveyed, which. opening shall at no time be closed against such passengers. and their baggage, subject, however, to all proper regulations of police and railroad discipline of persons on the said: premises."

Subsequent to the execution of these deeds, and in May, 1857, defendant's predecessor executed quit-claim deeds to the trustees of Brimmer above mentioned, and to the general guardian of Murray, of an undivided ·half of the remaining ten feet of said "alley," although it nowhere appears that such predecessor had any title to such ten feet. By mesne conveyances, in or about September, 1873, Edward R. Hammatt having become trustee for Brimmer, Jr., as such trustee became, and has ever since been, the owner of the premises now leased to plaintiff, which premises are bounded by, and do not include in the conveyances or lease, any portion of the strip of land heretofore spoken of, although plaintiff claims a right of way over the thirty feet strip dedicated for a public street by said James Wadsworth in his deed of January, 1844.

Soon after the execution of the deeds to the railroad company above mentioned, the company laid its tracks along this twenty feet of the thirty feet strip which lies south of the premises leased by plaintiff, and has ever since used the tracks for running its cars into and out of its depot at the

west end of such strip.   It appears also that there has been since the conveyance by Wadsworth in 1844, and upon the premises retained by him, and bounded by this thirty feet strip, a hotel which has been accessible from defendant's depot across its tracks, and which has depended largely for its patronage and custom upon the passengers arriving at and departing from such depot of defendant's, and up to August, 1881, this thirty feet strip (excepting as twenty feet of it were used by defendant's tracks as above stated) has been open and used by the occupants of the hotel and by travelers as above described and by the public.   In May, 1887, the said Hammatt, as trustee of Brimmer, leased to plaintiff the hotel spoken of for three years at the annual rent of $4,000 and the plaintiff entered into possession under such lease, and has been and is now carrying on such hotel and restaurant.   The further fact was proved that the right of way across this thirty feet strip is beneficial to the hotel and restaurant, and to the plaintiff's possession, and is an appurtenance thereto of great value.

In August, 1881, the defendant entered upon the said strip or alley and built a high and substantial fence the whole length of the strip and on the edge of the twenty feet bordering on the remaining ten feet thereof, and such fence has been kept closed against the plaintiff and all others, and the defendants have thus wholly excluded the plaintiff, his servants, the guests of the hotel and all others from entering upon such twenty feet.   The fence is thus a total obstruction in the way of any passage across such twenty feet to all persons coming from the depot to the hotel. or from the hotel to the depot who might otherwise reach either place by traveling over this twenty feet, and in this way such obstruction has very greatly lessened the patronage of the hotel, and damaged thereby the plaintiff up to the commencement of this action in the sum of $300 as found by the trial judge.

This action was brought to enjoin the continuance of such fence and to recover damages for the time which it had stood. The complaint contained two counts, the first one stating the

facts of the conveyance to defendant's predecessor and the dedication of the strip as a public street and that the parties to the conveyance agreed mutually that the strip should remain and be a public street, and that it was necessary for the proper enjoyment of the hotel and restaurant that this strip should remain a public street. The plaintiff then set forth the erection of the fence, and thus, as he said, defend- ants wrongfully excluded him from the public street; and he further alleged that such fence was a nuisance.

In the second count the strip was called an *alley* or public highway, and the plaintiff claimed to have an easement or right of way or access across or to the twenty feet strip in question. The plaintiff also alleged (evidently with reference to the language of the deeds to the railroad company in 1857) that the defendant had not since the erection of the fence maintained an opening into that part of the alley appurtenant to the southerly side of said hotel for the convenient access of passengers and their baggage "to and from the alley or public highway as of right it should have done and was bound to do," and that it had thereby deprived passengers and their baggage of convenient access to said alley or public highway and thus prevented such passengers and their baggage from entering said hotel at all across or by means of said alley or public highway. The plaintiff then alleged the tracks and the fence to be a nuisance and asked for an injunction restraining defendant from continuing to permit its tracks to remain in the public street or alley, or from continuing the fence, etc. The answer of defendants was substantially a general denial.

When the case came on for trial the counsel for the defend- ant moved to dismiss the complaint, because, so far as the complaint therein showed, the plaintiff was an entire stranger to the whole matter, as the only allegation on that subject was that he was in possession of the premises and he did not appear as party or privy to any covenant or provision what- ever. The plaintiff then moved to amend by, in effect setting up his lease from the owner, to which defendant's counsel objected, that the amendment was not such an one as could be

made upon the trial, and that it set up a new and distinct cause of action and one which was on contract or covenant and which could not be joined with an action for damages for a nuisance. The objections were overruled and the trial proceeded. The facts, heretofore stated, were found by the judge who tried the cause, without a jury, and a judgment was decreed enjoining the continuance of the fence and providing for its removal, and for the recovery of the damages sustained by plaintiff, being the sum of $300. The General Term affirmed the judgment and the defendants appealed to this court.

We think the amendment allowed by the court was a proper exercise of discretion. It was in no sense the introduction of a new cause of action. Upon defendant's own objection, and assuming it to be well founded, the cause of action in the complaint was defectively stated, because it showed no right or interest on the part of plaintiff to take advantage of the rights, if there were any, of the owner of the premises known as the hotel property. For the purpose of obviating that objection and to show that the plaintiff had the same rights in the property, so far as to take advantage of the covenants in regard to it which its owner had, the allegation of the lease was added to the other allegations in the complaint.

The defendant's counsel now claims that it appears, from the uncontradicted facts, that there never was any public street over or on this thirty feet strip, because there never was any acceptance of the dedication on the part of the city authorities or any control over it ever assumed by them. He further argues that the plaintiff under the pleadings is not entitled to any relief, for the reason that his rights are therein based upon the alleged fact of the strip being a public street, and when that fact fails, his rights fail with it. The concession that there was no public street must be made, and for the reasons stated. It must also be conceded that the plaintiff does, in his complaint allege, especially in his first count, that this strip is a public street or highway, and he alleges the fence to be a nuisance for that reason. In the second count, however, we think there are facts enough alleged, especially

when the question does not appear to have been very clearly
raised before, upon which can be spelled out the assertion of
a right on the part of the plaintiff to have access to, and to
some extent a right of way over this strip, even if it be not to
all intents and purposes a public highway. In the second
count the plaintiff speaks of there being as appurtenant to the
hotel an easement which he describes, it is true, by metes and
bounds, but which a reading of the whole count enables one
to say is the allegation of an easement consisting of a right of
way over or access to some portion of this strip of land for
passengers and their baggage, and that the defendants having
erected the fence had left no opening therein at certain places
which were appurtenant to the southerly side of said hotel,
which of right the defendant should have done.

This is clearly a claim founded, not upon the fact that this
strip was a highway and that as such any obstruction thereof
was illegal, but it is a claim founded upon a totally different
basis — a claim of a right to an opening into the alley appur-
tenant to the southerly side of the hotel, and for the con-
venient access of passengers and their baggage; and it was a
statement that, by erecting this fence, the defendant has vio-
lated that right, and has thereby prevented such passengers
and their baggage from entering said hotel, to plaintiff's
damage. All that was lacking in this language to show
exactly what fact the claim was founded upon, was the state-
ment that the right of way was reserved by the deeds of
Wadsworth, as trustee and guardian, executed in 1857. It
might have been ground for a motion to make the complaint
more definite and certain, but the claim is obviously not based
upon rights arising solely from the assumption that the strip
of land was, at all events, a public highway. If the plaintiff
is, therefore, entitled to any relief on this branch of the case
by virtue of the reservation in those deeds, and which he
could obtain on no other ground, I think it should be granted
him now, instead of reversing the judgment because the
plaintiff's right to relief was not clearly and accurately stated,
the result of which would be an application to amend the

complaint and then going to trial and thus incurring great and in this case useless expense.

By the failure to accept the dedication, the thirty feet in question remained the property of Wadsworth, and descended to his devisees at his death. By the deeds of the trustees of Brimmer and the guardian of Murray, all the estate of Brimmer and Murray in the twenty feet of the strip in question was conveyed to the railroad company. Such interest was said to be the equal undivided one-half part of such portion. But whatever it was, up to that amount, such estate was conveyed to the company. The title of Murray to about one-half of the property upon which the hotel stands, and which was bounded upon the said strip, was subsequently conveyed to the trustee of Brimmer who is the lessor of the plaintiff. Whatever rights, therefore, which the other devisees under the will of James Wadsworth may have in this twenty feet of the original thirty feet strip, as tenants in common with the company, about which we say nothing, as nothing is required to be said in this case, it is clear that the present plaintiff, who claims as lessee of the lessor who executed these deeds of 1857 to the railroad company, cannot raise the question of their invalidity to convey the interest of the *cestui que trust* and infant Brimmer and Murray. They must be regarded as valid deeds and as conveying all the interests of Brimmer and Murray in this twenty feet to the railroad company, and such grantors must be regarded as thereby abandoning all claim to the same as a public street or highway. They are no longer tenants in common with anyone.

The sole remaining question, therefore, is, what rights, if any. were reserved to Brimmer and Murray by those deeds of 1857? The grantors, in those deeds, contemplated the possible, if not probable, erection of a building over this twenty feet, showing thereby a clear intent to abandon all pretense of a claim for its use as a public street or highway, even if such abandonment were not otherwise conclusively shown by the execution of the deeds.

But the deeds contained, in addition, language providing

for an opening and access to this twenty feet, which language has already been quoted, and the plaintiff claims that if the deeds are valid this language, under all the circumstances, must be construed to be a covenant and the burden thereof as running with the land conveyed and in favor of those having a legal interest in the hotel lands, and that such covenant makes the right of access and transit to and across this twenty feet a right or easement appurtenant to the hotel premises. On the other hand, the defendants claim that the language used makes a condition subsequent, which cannot be taken advantage of by any but the grantor and his heirs.

We incline to the construction contended for by the plaintiff. The fact that the deed uses the language "upon condition," when referring to the conveyance by the grantors, is not conclusive that the intention was to create an estate strictly upon condition. The question is always what was the intention of the parties, and while such intention is to be gathered from the language used, yet its construction may frequently be aided by reference to all the circumstances surrounding the parties at the time of the execution of the deeds, because the court is thus enabled to be placed exactly in their situation, and to view the case in the light of such surroundings.

From the language of the first deed from Wadsworth to defendant's predecessor, in which the land is conveyed to it for the purpose of a passenger and freight depot only, taken in connection with the fact of the existence of a hotel and restaurant at that time on the land retained by him, and looking at the further fact that from 1844 to 1857 this strip in question had been kept open, and full access to the depot and the hotel on Wadsworth's property was had over this strip by passengers, guests, and the public in general, and that the patronage of the hotel was largely dependent upon the traveling public coming to and departing from said depot — all these facts would lead one to the unhesitating conclusion that the language used in those deeds in 1857 was for the benefit of the hotel property, and was not meant to create a condition

subsequent, which courts regard with no very friendly eye, upon a failure to perform which the estate was to be forfeited, and which none but the grantor or his heirs could take advantage of. It was intended to be an agreement or covenant between the parties running with the land, providing for this access or right of way so as to continue or enhance the value of the hotel property by providing for such easy access to it from defendant's depot for passengers and baggage. (See *Stanley* v. *Colt,* 5 Wall. 119; *Countryman* v. *Deck,* 13 Abb. N. C. 110.)

Courts frequently, in arriving at the meaning of the words in a written instrument, construe that which is in form a condition, a breach of which forfeits the whole estate, into a covenant on which only the actual damage can be recovered. (See Hilliard on Real Property [4th ed.], page 526, § 13; 2 Washburn on Real Property [3d ed.], chap. 14, subd. 3, page 3, *et seq.*) It is asserted, however, that if this language be treated as a covenant, still the plaintiff cannot take advantage of it, as he is not a party or privy to it.

The grantors in these deeds were also the owners of the hotel property, and the easement provided for in the deeds for the transit of passengers and their baggage over this twenty feet must be construed as reserved, not for the benefit of such passengers in any sense, but as an easement reserved for the benefit and in favor of the grantors being owners of the remaining hotel property, and as appurtenant to it, and fairly necessary for its full and proper enjoyment. It, therefore, runs with the hotel property and in favor of its owner or lessee, the latter of whom has such an interest in its existence as courts will recognize and protect.

As the rights of the plaintiff are, in our view, dependent upon the deeds of 1857, the judgment must be in accordance with their terms. The courts below erred in not limiting the relief granted to plaintiff by the language of such deeds. As the judgment provided for a full and entire destruction of the fence in question, it must be reversed and a new trial ordered, or else it must be modified so as to provide for an opening

into the strip through that or any other fence or obstruction, of a size reasonable, proper and fit, which shall be opposite to the hotel and adjacent to the premises conveyed by the deeds, and large enough for the convenient access of passengers and their baggage to and from the said strip, which opening must at no time be closed against such passengers and their baggage, and which access must be subject to all proper regulations of police and railroad discipline of persons on the said premises.

We shall order a reversal of the judgment, although a modification as above stated could be easily provided for, unless the plaintiff consents to waive the damages he recovered in the courts below. We do this because we are greatly dissatisfied with the evidence upon which the recovery as to the damages was based. It was exceedingly vague and loose, if not to some extent, guess work. It seems, also, to have been made to some extent at least upon a mistaken view as to the defendant's rights and liabilities under its deeds from Wadsworth to the trustee and guardian. Evidence seems, also, to have been offered and received upon the assumption of the right of the plaintiff to a totally unobstructed access to and transit across this whole thirty feet in controversy at all times, ignoring the limitations of the right as contained in the deeds of 1857 to the railroad company. Some portion of the damages may also have been awarded on account of the restaurant in defendants' depot and its consequent effect upon the patronage of plaintiff's restaurant, and upon the rental value of plaintiff's hotel, which the learned judge thought, after all, was the criterion for the damages sustained by plaintiff.

Under these circumstances we are disposed to order a new trial for the errors as to the general rights of the parties contained in the judgment appealed from, so that upon a new trial with those rights plainly defined, the evidence on the subject of damages may be more direct and confined within smaller limits than it was on the trial. This reversal, however, may be avoided in the discretion of the plaintiff by his consenting to waive the damages. If the plaintiff choose, he may consent to waive and remit his recovery for the past

damages which he alleges he has sustained, and, in that case, we will then modify and affirm the judgment as modified in accordance with this opinion, and after striking out the amount recovered for damages.

The order will, therefore, be that the judgment of the court below is reversed, and a new trial granted, unless plaintiff stipulates to waive the damages contained in such judgment, in which case the judgment will be modified as already stated in this opinion, and, as modified, affirmed without costs to either party in this court.

All concur.

Ordered accordingly.