FREDERICK A. CLAPP vs. AARON O. WILDER & another.

Worcester.    October 4, 1898. — June 20, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Deed — Condition — Reservation — Restriction — Declarations of Grantor.*

The owner of two adjoining lots of land, lot "A," on which was a store building, and lot "B," upon which was a dwelling-house occupied by him, conveyed lot "A" by deed containing the following provision : "And this conveyance is made upon the express condition that said W. [the grantee], his heirs and assigns, shall never erect any building nearer the street line of said land than the store building now thereon." The grantor's executors sold lot "B" to his widow, whose heirs conveyed it to J., and J. conveyed it to the plaintiff in this suit. *Held,* on a bill in equity to enjoin W. from building an addition to his store on lot "A," that the clause in question was a condition, and that upon full consideration of the whole deed in the light of the attendant circumstances the plaintiff had failed to show that this condition was created for the benefit of his land. KNOWLTON, MORTON, & LATHROP, JJ., dissenting.

Declarations of a grantor as to his purpose in inserting a condition in a deed made just after the delivery thereof, are inadmissible at the trial of a bill in equity to restrain the owner from a violation of the condition.

BILL IN EQUITY, for an injunction to restrain the defendants from building an addition to their store building, in violation of a provision in a deed of land in Leominster. The case was submitted to the Superior Court on an agreed statement of facts, in substance as follows.

On March 1, 1867, Joseph M. Eaton, who was the owner of two adjoining lots of land, lot A, on which was a store building, and lot B, upon which was a dwelling-house occupied by him, conveyed lot A to Aaron O. Wilder and Thomas A. Hills by warranty deed containing the following provisions : "Also a right of way eight feet wide on my land southerly of the above described, from said street easterly 'parallel' to and the whole length of the third above described line, for all the purposes of said premises : also the right to maintain a drain from the cellar under said store building conveyed to me by, . . . reserving, however, for my said adjoining land, forever, a right of way eight feet wide, the whole length of the southerly side of the above described land, making in connection with the right of way hereby con-

veyed to said Wilder and Hills a passageway sixteen feet wide, to be used in common by the owners of the estate on either side thereof, and by Savilon E. Wilder and his heirs and assigns forever, for all the purposes the estate now owned by him; also reserving the right to maintain the drain from the cellar under the house where I now reside to the cellar under said store building. And this conveyance is made upon the express condition that said Wilder and Hills, their heirs and assigns, shall never erect any building nearer the street line of said land than the store building now thereon."

The front line of the store building on lot A was twenty-two and one half feet from the easterly line of Central Street. At the time of the conveyance to the defendants, Eaton was an invalid confined to the house. He died in 1868. While negotiations for the purchase of lot A were pending between said Eaton and the defendants, and prior to the delivery of the deed, said Eaton told them that if he sold them the property he did not wish his view of Central Street from his sitting-room window cut off, and he should have some clause inserted in the deed to prevent this, and when the deed was delivered he told the defendants he had put in a clause so that his view of Central Street from his sitting-room window should not be cut off. Soon after the delivery of the deed said Eaton told others that his purpose in preventing the defendants building nearer Central Street than the line of the old store was to save his view of the street from his sitting-room window, and that he expected the land would be built over when he was gone. The plaintiff denied the competency of these declarations of Eaton, and it is agreed that if they were incompetent and immaterial they were to be disregarded by the judge.

Eaton's executor sold lot B to his widow, who died in 1885, and her heirs conveyed said lot to Joseph W. Wilder, who in 1888 conveyed the same to the plaintiff. None of these deeds of lot B contained any mention that the condition in the deed of lot A to the defendants was imposed for the benefit of lot B, or contained any reference whatever to said condition.

The plaintiff bought lot B knowing of this condition. Since the deed of lot A to the defendants the character of the neighborhood has changed, the buildings now being mainly devoted to business purposes, and the neighborhood is now to all intents

and purposes a business or mercantile one. The old house in which Eaton resided has been torn down, and the plaintiff, believing the restriction was valid, built a store thereon. The defendants owning lot A proposed to enlarge their store by building twenty feet nearer the line of Central Street. The plaintiff forbade them to do this, and, his notice being disregarded, brought this bill.

Hearing before *Gaskill*, J., who ruled that the clause in dispute is a restriction, and found "from the terms of the deed and surrounding circumstances and situation that it was not intended by the grantor to create a servitude for the benefit of the plaintiff's land," and then by consent of counsel reported the case to this court upon the bill, answer, agreed facts, and his "findings."

The case was submitted on briefs to all the justices.

*C. A. Babbitt*, for the plaintiff.

*H. Mayo*, for the defendants.

HAMMOND, J. This case turns upon the legal force and effect of this clause in the deed from Eaton to the defendants, namely, "And this conveyance is made upon the express condition that said Wilder and Hills, their heirs and assigns, shall never erect any building nearer the street line of said land than the store building now thereon."

The first question is whether this is a common law condition. The deed is in the ordinary form of a warranty deed in general use in this Commonwealth, is carefully drawn, and it bears upon its face evidence that the draftsman understood the meaning of the legal terms used.

It conveys in apt language the land now owned by the defendants, and creates also, in express terms, two easements, one of which is a right of way over a strip of land eight feet wide on the grantor's land next southerly of and adjoining the land conveyed, and the other is the right to maintain a drain from the store building as conveyed to the grantor by a prior deed; and it reserves a right of way over a strip of land upon the southerly side of the land conveyed, making, in connection with the right of way above conveyed to the defendants, a passageway sixteen feet wide to be used in common, and also the right to maintain a certain drain from the cellar of the house where the grantor resides to the cellar under said store building.

Up to this point the grantor has used language apt to create easements and reservations. He desires to do one thing more, and that is to prevent the erection of any building within a certain distance of the street. Everything else has been provided for. Here the language changes, and, as to this one thing, the deed is upon the express condition that this provision be complied with.

The language is " upon the express condition," an emphatic form of the expression " on condition." Whatever may be the force of this language in a will (see *Attorney General* v. *Wax Chandlers' Co.* L. R. 6 H. L. 1; *Bradstreet* v. *Clark*, 21 Pick. 389), there can be no doubt of its usual meaning in a deed. The phrase *sub conditione,* or " on condition," is one of the three phrases by which, without more, a conditional estate may be created. It is the first one named by Littleton, and Coke says of it, " This is the most expresse and proper condition in deed, and therefore our author beginneth with it." Co. Lit. 203 a. *Rawson* v. *Uxbridge School District*, 7 Allen, 125, and authorities cited.

In the deed before us it applies to one single thing perfectly plain and simple. The common law as to the creation of conditional estates has always been considered a part of our common law. If we are to have such estates it is important that there should be the least possible uncertainty as to the form of the language to be used in creating them ; and, when we find in a deed an intensified form of the phrase which from the earliest times has been regarded as " the most expresse and proper " phrase by which to create such an estate, it is to be assumed, in the absence of anything appearing in the deed to the contrary, that the phrase is used for its proper legal purpose, namely, to create such an estate, and that such an estate is thereby created. No doubt there is a disposition among courts to look for something in the deed which shall modify the severity of the language ; and sometimes considerable astuteness has been exercised in this direction; *Post* v. *Weil*, 115 N. Y. 361; and no doubt the language is sometimes used when, from the whole deed, it sufficiently appears that it could not have been intended in its full technical sense, and in such cases a restriction and not a technical condition is the result.

Thus in *Sohier* v. *Trinity Church,* 109 Mass. 1, 19, the expression " in trust nevertheless and upon condition always " was held not to create a condition, because " the grantors were merely a committee who had taken their title in trust for the society ; and if it were to come back to their heirs by forfeiture, it must be held by them in trust for the society, and thus would merely be turned into a trust estate."

In *Episcopal City Mission* v. *Appleton,* 117 Mass. 326, the words " upon and subject to the condition " preceded one paragraph, and the words "and also upon the further condition" preceded the next paragraph ; and they were held not to create conditions.   As stated by the court, there was no reason for giving to the first phrase any different meaning than that given to the other ; and both clauses could not be construed as conditions, because "upon that construction a breach of the first would, upon entry by the grantor or his heirs, forfeit the whole estate and leave nothing in the grantee to which the last part of the second clause could apply."   The second clause could " therefore have effect only by way of restriction, and the first clause must have a like interpretation and effect."

So also where a conveyance is subject to several conditions of varying importance regulating the mode in which the grantee may use and enjoy the land, and it appears that they are imposed as a part of a general scheme of improvement, and therefore enforceable in equity by the owners of the estates for whose benefit they were imposed, they may be considered restrictions, especially if one of them be of such a nature as to be regarded as a personal stipulation.   *Skinner* v. *Shepard,* 130 Mass. 180. *Ayling* v. *Kramer,* 133 Mass. 12.

So also a deed reciting that the premises are conveyed subject to a condition contained in a prior deed, and reciting the condition, may be construed, not as reimposing the condition by the grantor, but as conveying the title the grantor had received from his predecessor.

Nor is the case of *Cassidy* v. *Mason,* 171 Mass. 507, to be understood as extending this doctrine further than as stated in these two paragraphs.   *Ayling* v. *Kramer, ubi supra.*   See *Locke* v. *Hale,* 165 Mass. 20.

The case at bar does not come within any exception to the

general rule as to the legal meaning of the phrase "upon the express condition." As stated by Parker, C. J., in *Gray* v. *Blanchard*, 8 Pick. 283, 287, the words, "'This conveyance is upon the condition,' can mean nothing more nor less, than their natural import. . . . It would be quite as well to say that the words mean nothing, and so ought to be rejected altogether."

It must be held, therefore, that the deed from Eaton to the defendants conveyed a conditional fee, and that the right of reverter, remaining in the grantor up to the time of his death, went to his heirs or devisees. *Hayden* v. *Stoughton*, 5 Pick. 528. *Gray* v. *Blanchard*, 8 Pick. 283. *Austin* v. *Cambridgeport Parish*, 21 Pick. 215. *Guild* v. *Richards*, 16 Gray, 322. *Allen* v. *Howe*, 105 Mass. 241. Pub. Sts. c. 127, § 1.

The next question is whether this condition was imposed for the benefit of the land now held by the plaintiff. If it was, then it is immaterial whether it be in the form of a condition or restriction so far as respects the right of this plaintiff. *Whitney* v. *Union Railway*, 11 Gray, 359. *Hopkins* v. *Smith*, 162 Mass. 444, and cases therein cited.

Upon this question the case comes to us in a singular way, and it is somewhat difficult to understand the terms of the report.

Upon the record before us there is an agreed statement of facts, and it would seem that the case was submitted to the Superior Court upon that.

The trial judge ruled that the clause in dispute is a restriction, then "found from the terms of the deed and surrounding circumstances and situation that it was not intended by the grantor to create a servitude for the benefit of the plaintiff's land," and then by consent of counsel reported the case to this court upon the bill, answer, agreed facts, and his "findings." If his so called finding is to be regarded as a finding of fact, and that finding is to stand, then there is no case for the plaintiff.

The parties, however, have treated the matter as in substance a ruling in law, and we therefore assume it was intended as such, and that the case is before us upon the bill, answer, and agreed facts.

The burden is upon the plaintiff to show that the condition in the deed to the defendants created a servitude or right in the

nature of an easement, which by implication is made appurtenant to his land.

The rule is stated in *Whitney* v. *Union Railway*, *ubi supra*, to be that when " it appears by a fair interpretation of the words of a grant that it was the intent of the parties to create or reserve a right, in the nature of a servitude or easement, in the property granted, for the benefit of other land owned by the grantor, and originally forming with the land conveyed one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee; and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land."

But whether the condition was intended to create merely a right of reverter, or an easement appurtenant to some other land, is always a question of intent. As stated in *Beals* v. *Case*, 138 Mass. 138, 140, " It is always a question of the intention of the parties; and, in order to make this rule applicable, it must appear from the terms of the grant, or from the situation and surrounding circumstances, that it was the intention of the grantor in inserting the restriction [condition] to create a servitude or right which should enure to the benefit of the plaintiff's land, and should be annexed to it as an appurtenance."

There is no language in the deed expressly stating that this condition was inserted for the benefit of the remaining land. It would have been easy to say that it was so inserted if that had been the intention of the grantor. This omission is rendered more significant when it is observed that the right of way which is reserved in the deed is " to be used in common by the owners of the estate on either side thereof," thereby showing that when the grantor intended to make a reservation for the benefit of his remaining lot he appreciated the importance of making that intention clear, and knew how to do it.

We must, therefore, look into the situation and attendant circumstances.

It is not a case where the owner of land adopts a scheme or plan for its improvement, dividing it into house lots, and inserting in the various deeds uniform restrictions as to the purposes for which the land may be used, such restrictions upon each

being intended for the benefit of the other lots, and it is there-
fore not included in the class of cases of which *Whitney* v. *Union
Railway*, 11 Gray, 359, and *Hopkins* v. *Smith*, 162 Mass. 444, are
examples.

And the case is still further distinguishable from many of
these cases by the fact that in them there is express language
in the deeds showing an intention to create the easement for the
benefit of other land.

And the case is unlike *Peck* v. *Conway*, 119 Mass. 546. In
that case there was a reservation and not a condition, and the
grantor could have no interest in the reservation other than as
connected with his remaining land. In this present case the
grantor retained an interest in the land sold to the defendants,
and after the sale of the remaining land the right of reverter in
the defendants' land still remained in their heirs or devisees.

It appears that the grantor was an invalid, and that he usu-
ally sat at a window from which he had a good view of the
street, and that while negotiations were pending between him
and the defendants, and prior to the delivery of the deed, he
told them that if he sold the property to them he did not wish
his view of the street from that window cut off, and he should
have some clause inserted in the deed to prevent this, and when
the deed was delivered he told the defendants he had put in a
clause so that his view of the street from the window should not
be cut off.

He was sick, desired to have the view from the window re-
main unimpaired so long as he should live where he then lived.
He was looking out for his personal comfort while in occupancy
of the house, but that purpose is perfectly consistent with the
view that he was not making any provision for the future
occupant.

It may be admitted that it would be for the benefit of the
plaintiff's land to have the condition observed, but the real
question is, Was it the intention of the grantor that the right
to have it thus observed should be an appurtenance to that
land?

On this question we may properly take into consideration the
manner in which he protected himself. In the case of a restric-
tion or reservation, the person who creates the restriction stands,

as a rule, absolutely indifferent to its observance, except as he may be interested as owner of some adjoining land. But it is otherwise in the case of a condition. The owner of the right of reverter has an interest in the land conditioned entirely independent of the benefit of other land owned by him or any other person. It is a right personal to him and his heirs or devisees. Indeed in ancient times conditions were, as a rule, of such a nature that their observance or violation was of no benefit or damage whatever to any other land than that upon which the condition was imposed, and the only persons interested were the owners of the defeasible estate on the one hand, and the owner of the right of reverter on the other. See Co. Lit. 201 a, *n.*

In this very case the owner of the right of reverter could, in any event, enter for breach of condition and hold the land free from condition, as of his original estate, as against the whole world, unless indeed an exception be made in favor of the plaintiff.

The only circumstance here relied upon as showing that the grantor intended to create this conditional estate for the benefit of his remaining land is that he was occupying it as a homestead at the time of the grant, and that it would be benefited by the observance of the condition.

But these facts are just as consistent with the idea that the grantor intended that this remaining land should have the benefit of the condition only so long as he pleased, whether occupied by him or not, and that at all times the right of reverter should remain unimpaired in him or his heirs.

Upon full consideration of this whole deed in the light of the attendant circumstances, we think that the plaintiff has failed to show that this condition was created for the benefit of the plaintiff's land.

We are aware that in other States there have been decisions that may seem to be, and perhaps are, in conflict with this decision, although we are inclined to think that, upon full examination, the difference may be more seeming than real, and that the difference of result arises rather from a difference in the facts than from any difference as to well recognized legal or equitable principles. See *Clark* v. *Martin*, 49 Penn. St. 289; *Watrous* v. *Allen*, 57 Mich. 362; *Post* v. *Weil*, 115 N. Y. 361.

But however that may be, we think a decision for the plaintiff on the facts of this case would be extending the doctrine of *Whitney* v. *Union Railway,* ubi supra, and of similar cases in this Commonwealth, beyond its legitimate scope, and much further than it ought to go.

The case is rather to be classed with such cases as *Badger* v. *Boardman,* 16 Gray, 559; *Jewell* v. *Lee,* 14 Allen, 145; *Sharp* v. *Ropes,* 110 Mass. 381; *Dana* v. *Wentworth,* 111 Mass. 291.

It seems to us that in all these cases it is better to get at the intention of the grantor from the language of the deed, interpreted in the light of the attending circumstances, than to conjecture the intent from the circumstances, and then to make the language of the deed bend to that.

The declarations of Eaton, made after the delivery of the deed, were properly excluded.                    *Bill dismissed.*

MORTON, J.    There is no doubt that there are words in the clause in question express and apt to create a condition at common law, and that estates upon condition are a well known form of estate.    But that does not assist us much in the construction of the clause.    There never has been any hard and fast rule that words express and apt to create a condition at common law in a deed should always be so construed.    From the time of Lord Coke, if not before, such words have received a different construction when required in order to promote the obvious intent and purpose of the parties.    Co. Lit. 203 a.    *Lord Cromwel's case,* 2 Co. 70.    Shep. Touch. 122.    1 Bl. Com. (Bk. 2, Sharswood's ed.) 151, *n.* 1.

The converse has been equally true.    Words not apt to create a condition in a deed at common law have been construed as creating one when such appeared to be the intention of the parties and the language admitted of such a construction.    Shep. Touch. 123.

Neither does the law look with especial favor upon estates on condition.    " Conditions subsequent," it is said by Chancellor Kent, " are not favored in law."    4 Kent Com. 129.    They are strictly construed against parties seeking to enforce them, and equity affords relief in various cases from forfeiture for a breach of them.    *Bradstreet* v. *Clark,* 21 Pick. 389.    *Merrifield* v. *Cobleigh,* 4 Cush. 178.    *Lilley* v. *Fifty Associates,* 101

Mass. 432.   *Lundin* v. *Schoeffel,* 167 Mass. 465, 470, and cases cited.

These doctrines have been long and well settled.   And they have led this court and other courts frequently to construe so called conditions not according to the strict meaning of the words used, but in such a manner as to carry out the intentions of the parties as manifested by a fair interpetation of the language when viewed in the light of the attendant circumstances. If it appeared that the parties intended to create an estate upon condition, effect has been given to the intention.   If it appeared that some other right or obligation was intended to be created, the language has been construed accordingly.   The matter has been regarded as one of substance rather than of form, and the cardinal rule of construction has been not to ascertain the effect in regard to estates upon condition, but to ascertain and enforce the intention of the parties so far as it could be done consistently with established rules.    In numerous cases, for one reason or another, words apt to create a condition at common law in a deed have been interpreted as meaning something else, — limitations, covenants, restrictions, easements, servitudes, and trusts, — `because it was thought that such a construction would best conform to and carry out the intention of the parties.   *Parker* v. *Nightingale,* 6 Allen, 341.   *Chapin* v. *Harris,* 8 Allen, 594. *Sohier* v. *Trinity Church,* 109 Mass. 1, 19.   *Jeffries* v. *Jeffries,* 117 Mass. 184.   *Episcopal City Mission* v. *Appleton,* 117 Mass. 326.   *Skinner* v. *Shepard,* 130 Mass. 180.   *Ayling* v. *Kramer,* 133 Mass. 12.   *Hopkins* v. *Smith,* 162 Mass. 444.   *Cassidy* v. *Mason,* 171 Mass. 507.   *Avery* v. *New York Central & Hudson River Railroad,* 106 N. Y. 142.   *Post* v. *Weil,* 115 N. Y. 361. *Clark* v. *Martin,* 49 Penn. St. 289.   *Watrous* v. *Allen,* 57 Mich. 362.   *Lake Erie & Western Railroad* v. *Priest,* 131 Ind. 413. *Wier* v. *Simmons,* 55 Wis. 637.   *Fuller* v. *Arms,* 45 Vt. 400. *Mills* v. *Davison,* 9 Dick. 659.   *Neely* v. *Hoskins,* 84 Maine, 386.

The decisions in which this has been done have not been confined to any particular class of cases, such as, for instance, building schemes and plans of general improvement, but the rule has been applied in other cases, and has been recognized in cases where it was not applied.   It is an application to conditions in deeds of the rule adopted in regard to other written instruments,

namely, to so construe them as best to promote the obvious intent and purpose of the parties.    *Merrifield* v. *Cobleigh*, 4 Cush. 178. It is the same principle which has led to the construction of a deed intended to take effect *in futuro,* as a covenant to stand seised, (*Trafton* v. *Hawes*, 102 Mass. 533, 541,) and is, I think, a sound and sensible rule, and one calculated to do justice between parties.

The question then is, it seems to me, how shall this clause be construed in the light of adjudged cases in this and other courts, and in the light of the attendant circumstances at the time of the execution of the deed.

The latest case in this court in which the construction of a condition in a deed has been considered is *Cassidy* v. *Mason*, 171 Mass. 507.    There were three deeds, each having a clause that contained language apt to create a condition at common law. In the first deed the language was " Provided that no building shall ever be erected on said lots of land or either of them within ten feet of the streets as exhibited on said plan."    In the second it was, " On condition that no building shall ever be erected on said lot within ten feet of said plan [*sic*] as laid down on said plan."    And in the third it was, " The premises are sold subject to the condition that no building shall ever be erected on the granted premises within less than ten feet from said street." It will be seen that the object of each provision was the same as here, namely, to prevent the erection of buildings within a certain distance of the street, and that words, the most apt to create a condition at common law, were used, namely, " provided," " on condition," and " subject to the condition."    There is nothing in the case as reported or in the papers on file that shows that the provisions were inserted as part of a general scheme or plan of improvement, and the opinion does not purport to go on that ground.    All of the justices sitting concurred, so far as appears, in the opinion, which was written by the late Chief Justice.    It was held that the provisions should be continued as restrictions and not as conditions.    It is not really attempted, as I understand it, to distinguish that case from this.    It would seem that the remark of Lord Ellenborough in *Liverpool Waterworks Co.* v. *Atkinson*, 6 East, 507, was applicable : " With a decided case exactly in point, it would be extraordinary if we were

to apply a different rule of construction." Moreover, it is not easy to see how the manner in which that case is dealt with tends to promote certainty in the law regarding conditions in deeds. In *Hopkins* v. *Smith,* 162 Mass. 444, the provision that was the subject of consideration was expressed in the form of a condition with what was in effect a clause of forfeiture and reverter, but the court held that it constituted a restriction for the benefit of the purchasers of other lots. This case, with *Cassidy* v. *Mason, ubi supra,* illustrates the tendency of this court and shows the extent to which it has gone in recent decisions in the construction of so called conditions. In *Ayling* v. *Kramer,* 133 Mass. 12, a condition that "the front line of the building which may be erected on the said lot shall be placed on a line parallel with and ten feet back from the said Newton Street," was held to constitute a restriction. The decision was put on the ground that the condition was imposed as a part of a general scheme of improvement. But conditions are construed as restrictions in such cases, not because courts have any special fondness for or leaning towards building schemes or plans of general improvement, but because it would be inequitable and unjust as against the owners of adjoining and neighboring estates to construe them otherwise, and to permit a party taking an estate with notice of a valid agreement respecting its mode of use and occupation towards such estates to avoid it. *Whitney* v. *Union Railway,* 11 Gray, 359. *Parker* v. *Nightingale,* 6 Allen, 341. It is difficult to see why such reasoning does not apply as well between two as between twenty, or why, if it is inequitable and unjust to permit a party to avoid his agreement when there are ten estates to be affected, it is not also inequitable and unjust when there is only one estate to be affected. See also *Jeffries* v. *Jeffries,* 117 Mass. 184, in which the clause, "provided that the roof of the aforesaid stable shall never be raised more than thirteen feet above Olive Street," in each of three deeds of three adjacent lots from a common grantor, was held to constitute a restriction on each lot in favor of the other two. In *Episcopal City Mission* v. *Appleton,* 117 Mass. 326, and *Skinner* v. *Shepard,* 130 Mass. 180, there was no building scheme or plan of general improvement. The respective deeds contained building limitations in the form of conditions. They were construed as restric-

tions, for reasons there given.　See also *Parker* v. *Nightingale* and *Merrifield* v. *Cobleigh, ubi supra.*

In *Post* v. *Weil*, 115 N. Y. 361, the owners of two adjoining farms conveyed one subject to this provision: " Provided always, and these presents are upon this express condition, that the aforesaid premises shall not, nor shall any part thereof, . . . be at any time hereafter used or occupied as a tavern or public house of any kind." It was held that the provision constituted a restriction for the benefit of the adjoining property.　See also *Avery* v. *New York Central & Hudson River Railroad*, 106 N. Y. 142.　In *Clark* v. *Martin*, 49 Penn. St. 289, the owner of two adjoining lots, who resided on one, conveyed the other " upon this express condition, nevertheless, that the said . . . their heirs or assigns, shall not build or erect, . . . on any part of the hereby granted lot of ground, beyond the distance of sixty-five feet from the said Eighth Street, any buildings whatsoever, other than privies, milk or bathing-houses, and walls or fences 'not exceeding the height of ten feet from the level of the ground." It was held that it was the duty of the defendant not to build in violation of the condition, and that this duty was reserved to the original grantor, not as a mere personal obligation, but for the benefit of the adjoining land, Lowrie, C. J., who wrote the opinion, saying, " Common sense cannot doubt its purpose "; meaning the purpose of the condition, and that it was to benefit the adjoining land.　In *Watrous* v. *Allen*, 57 Mich. 362, the deed was upon " the express condition " that if the grantees, their heirs and assigns, should at any time sell or keep for sale spirituous or intoxicating liquors, the title of the premises should thereupon cease and revert to the grantor, his heirs and assigns, and it should be lawful for them to enter and expel the grantees and their heirs and assigns. It appeared that the grantor was the owner of a large amount of real estate in the vicinity of and contiguous to the granted premises, and that the same had been plotted; but it did not appear that any of the other lots had been sold, or that, if sales had been made, the deeds contained provisions uniform with that above referred to.　It was held that the condition could be enforced in equity as an agreement by one who had succeeded to the title of the original grantor to the adjoining and neighboring land against one who had succeeded to

the title of the original grantee.   See also *Fuller* v. *Arms*, 45 Vt. 400 ;  *Lake Erie & Western Railroad* v. *Priest*, 131 Ind. 413; *Wier* v. *Simmons*, 55 Wis. 637.

It seems to me that the case of *Cassidy* v. *Mason, ubi supra,* and the other cases to which I have referred, are decisive of this.   In the present case, at the time of the conveyance to the defendants, their grantor owned and occupied as a homestead the premises now belonging to the plaintiff, and adjoining on the north those of the defendants.   The premises were both situated on the easterly side of Central Street in Leominster.   On the premises conveyed to the defendants the only building, so far as appears, was a store two stories high and twenty-two and one half feet from the street line.   On those retained by the defendants' grantor was the dwelling-house occupied by him.   This was considerably nearer the street than the store, and was, as appears from the scale to which the plan is drawn, about thirty-five feet south of the store.   It appears that there was a good view of Central Street which was the main street of Leominster from the homestead occupied by the defendants' grantor over the space between the store and the street.   The defendants have built out to the street line, although they were notified by the plaintiff not to do so, and though their deed prohibits them from doing so.

It is stated in the majority opinion that the declarations of the defendants' grantor made after the delivery of the deed were properly excluded, and they clearly were.   I think that it is equally clear that his declarations made before and at the time of the delivery of the deed were also properly excluded. They were declarations by him respecting his purpose in having the clause inserted, and as such were, it seems to me, clearly inadmissible.   I therefore lay them one side.   *Harlow* v. *Thomas*, 15 Pick. 66.   *Noble* v. *Bosworth*, 19 Pick. 314.   *Davis* v. *Ball*, 6 Cush. 505.   *Miller* v. *Washburn*, 117 Mass. 371.   *Simanovich* v. *Wood*, 145 Mass. 180.   *Adams* v. *Morgan*, 150 Mass. 143. *Lilienthal* v. *Suffolk Brewing Co.* 154 Mass. 185.   *Sirk* v. *Ela*, 163 Mass. 394.

It is plain that the object of the so called condition was to prevent the defendants from doing what they have done, and to prevent them from doing it at any time either during the grantor's

life or afterwards. The language is " that said Wilder and Hills, their heirs and assigns, shall never erect any building nearer the street line," etc. The prohibition expressly extends not only to Wilder and Hills, but to their heirs and assigns, — to all who shall take through them. When Wilder and Hills took their deed, they thereby agreed for themselves and their heirs and assigns that they would never build any nearer the street line than the store then was. The right and obligation thus created were not limited to the lives of the grantor and grantees, and were not temporary in character, but were to continue indefinitely, and were permanent. Which, then, is the more reasonable, that they were created for the benefit of the adjoining estate, or for the personal benefit of the grantor? It is possible, perhaps, to think of the grantor as speculating upon possibilities of reverter and rights of re-entry, and as pausing to consider the differences between reservations and conditions; but it is not likely that he did so. It must have been plain to him, as it must, it seems to me, to every one else, that no one could have as much interest in having the space between the store and the street kept open as the owner and occupant of the adjoining premises, and that his interest would consist in the fact that he was such owner and occupant. This would apply to the grantor as well as to his successors in title. The grantor was not thinking of a personal right or privilege. He was dealing with property and rights of property, not with personal rights. That is shown by what was conveyed, and by the reservations of the rights of way and drainage. It is fair to assume that the scrivener who drew the deed knew that rights could be created for the benefit of an adjoining estate as well in the form of a condition as in the form of a reservation or restriction. To assume otherwise would be to suppose that he was ignorant of numerous cases in which this court has so held, and of long established rules. The change from the language of reservation to that of condition was not for the purpose of altering the nature of the right, but to express in the strongest terms that the estate which he was conveying should remain subject forever to an easement of light, air, and prospect in favor of the other estate. He does this by making the conveyance upon the express condition that the grantees, their heirs and assigns, should never build nearer the

street line than the store then was. The reasoning of the court in *Peck* v. *Conway*, 119 Mass. 546, where the grantor occupied as a homestead a lot adjoining that which he conveyed, seems to me applicable. " It is difficult," says the court, " to see how he [the grantor] would have any interest in restricting the use of the land sold, except as owner of the house lot which he retained. The nature of the restriction also implies that it was intended for the benefit of this lot. A prohibition against building on the land sold would be obviously useful and beneficial to this lot, giving it the benefit of better light and air and prospect; this is its apparent purpose, while it would be of no appreciable advantage for any other purpose. The fair inference is that the parties intended to create this easement or servitude for the benefit of the adjoining estate." It is true that in that case the right was created by reservation. But no stress was laid on that fact, and personal rights may be created as well by reservations or restrictions as by conditions. The question was whether the right was a personal right or was appurtenant to the adjoining land, and the court was led, from the situation and manner of occupation of the two estates, to hold that the right was not a personal right but constituted an easement in favor of the adjoining estate.

It is to be noted, also, that there are no words of re-entry, reverter, or forfeiture in the clause which we are considering. Such words are not necessary to constitute an estate upon condition. But if the grantor had intended to create a personal right in himself and his heirs and devisees in distinction from the rights of way and drainage created by reservation, it is not improbable, to say the least, that he would have added words so characteristic of estates upon condition.

The cases of *Badger* v. *Boardman*, 16 Gray, 559, *Jewell* v. *Lee*, 14 Allen, 145, *Sharp* v. *Ropes*, 110 Mass. 381, and *Dana* v. *Wentworth*, 111 Mass. 291, are clearly distinguishable from this. This is a case as in *Peck* v. *Conway* and *Clark* v. *Martin*, *ubi supra*, of a grantor owning and occupying a homestead, and owning and conveying an adjoining lot subject to a building limitation. Naturally the limitation would be intended for the benefit of the homestead. In *Peck* v. *Conway*, the adjoining lot was vacant. In *Clark* v. *Martin*, there was a house upon it. In the present

case there was a store upon it which stood farther back from the street than the homestead occupied by the grantor, thereby giving the homestead increased light, air, and prospect, which it was the manifest object of the condition to retain.    In neither *Badger* v. *Boardman, Jewell* v. *Lee, Sharp* v. *Ropes,* nor *Dana* v. *Wentworth* were the circumstances surrounding the parties when their deeds were made at all similar to those surrounding the parties when the deed in this case was made.

I think, therefore, that whether the provision is called a condition or a restriction, the plaintiff as owner of the adjoining premises is entitled to the benefit of the agreement contained in it, and that a decree should be entered in his favor.

Mr. Justice KNOWLTON and Mr. Justice LATHROP concur in this dissent.